**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

ARTURO ESPARZA MACIAS, *et al.*,

Plaintiffs,

     vs.

MONTERREY CONCRETE, LLC, and
JOSE DE LA ROSA,

Defendants.

Case No. 3:19-cv-00830-REP

---

## <u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

Rachel Colleen McFarland
(VA Bar #89391)
Jason Blair Yarashes
(VA Bar # 90211)
Legal Aid Justice Center
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
Telephone: 434-977-0553
Fax: 434-977-0558
Email: rmcfarland@justice4all.org
Email: jasony@justice4all.org

Nicholas Cooper Marritz
(VA Bar # 89795)
Simon Sandoval-Moshenberg
(VA Bar # 77110)
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Telephone: 703-778-3450
Fax: 703-778-3454
Email: nicholas@justice4all.org
Email: simon@justice4all.org

Preston Smith (VA Bar # 86908)
Ian Hoffman (VA Bar # 75002)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001-3743
Telephone: +1 202.942.6544
Facsimile: +1 202.942.5999
E-mail: preston.smith@arnoldporter.com
E-mail: ian.hoffman@arnoldporter.com

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

**Introduction**..................................................................................................................**1**

**Facts** ..............................................................................................................................**2**

**Argument** ......................................................................................................................**7**

    **I.   Plaintiffs' Contract and Quasi-Contract Claims Are Governed By Virginia Law** .....7

    **II.  The Complaint States TVPA Claims** .................................................................9

    **III.The Complaint States FLSA Claims** ...............................................................17

    **IV.Plaintiffs' Claims Are Not Time-Barred**.......................................................18

**Conclusion** ...................................................................................................................**20**

**Cases**

*Ali v. Khan*,
    336 F. Supp. 3d 901 (N.D. Ill. 2018) ...................................................................15

*Allen v. Express Courier Int'l, Inc.*,
    2018 WL 3577263 (W.D.N.C. July 25, 2018)......................................................17

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680 (1946)..............................................................................................17

*Aragon v. Che Ku*,
    277 F. Supp. 3d 1055 (D. Minn. 2017)................................................................13

*Black v. Powers*,
    628 S.E.2d 546 (Va. 2006)......................................................................................8

*Cruz v. Maypa*,
    773 F.3d 138 (4th Cir. 2014) ....................................................................2, 19, 20

*Davis v. Abington Memorial Hospital*,
    765 F.3d 236 (3d Cir. 2014)..................................................................................18

*Deressa v. Gobena*,
    2006 WL 335629 (E.D. Va. Feb. 13, 2006)..........................................................20

*Ditullio v. Boehm*,
    662 F.3d 1091 (9th Cir. 2011) ................................................................................9

*Fei Guan v. Bing Ran*,
    2017 WL 2881363 (E.D. Va. July 6, 2017) ...............................................1, 2, 16

*G4I Consulting, Inc. v. Nana Servs., LLC*,
    2012 WL 1677985 (E.D. Va. May 14, 2012) .........................................................8

*Hall v. DIRECTV, LLC*,
    846 F.3d 757 (4th Cir. 2017) ....................................................................2, 17, 18

*Heritage Disposal & Storage, L.L.C. v. VSE Corp.*,
    2017 WL 361547 (E.D. Va. Jan. 24, 2017) .........................................................18

*Hunter Innovations Co. v. Travelers Indem. Co. of Conn.*,
    753 F. Supp. 2d 597 (E.D. Va. 2010) .....................................................................8

*Kiwanuka v. Bakilana*,
  844 F. Supp. 2d 107 (D.D.C. 2012) ...............................................................14, 19

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ............................................................................................7

*Muchira v. Al-Rawaf*,
  850 F.3d 605 (4th Cir. 2017) ...................................................................... *passim*

*Muchira v. Al-Rawaf*,
  No. 1:14-cv-00770-AJT-JFA, Doc. 31 (E.D. Va. Sept. 5, 2014) ..........................15

*Pizzella v. Peters*,
  410 F. Supp. 3d 756 (D. Md. 2019) ...................................................................17

*Precision Pipeline, LLC v. Dominion Transmission, Inc.*,
  2017 WL 1100903 (E.D. Va. Mar. 23, 2017) .......................................................7

*Qin Yong Jin v. Any Floors, Inc.*,
  2012 WL 777501 (E.D. Va. Mar. 5, 2012) ..........................................................18

*Santamaria v. GL Constr., Inc.*,
  2015 WL 13035523 (E.D. Va. Dec. 28, 2015) .....................................................19

*Saraswat v. Jayaraman*,
  2016 WL 5408115 (E.D.N.Y. Sept. 28, 2016) .....................................................12

*Scott & Stringfellow, LLC v. AIG Commercial Equip. Fin., Inc.*,
  2011 WL 1348324 (E.D. Va. Apr. 8, 2011) ..........................................................8

*Smith v. Rock*,
  2013 WL 6633716 (N.D.N.Y. Dec. 17, 2013).......................................................12

*Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*,
  299 F. Supp. 2d 565 (E.D. Va. 2004) .................................................................18

*Thomaz v. It's My Party, Inc.*,
  2013 WL 1450803 (E.D. Va. Apr. 9, 2013) ..........................................................8

*Trbovich v. Garcia*,
  2016 WL 10514833 (E.D. Va. Aug. 24, 2016) (Payne, J.)...................................1, 8

*United States ex rel. Fadlalla v. DynCorp Int'l LLC*,
  402 F. Supp. 3d 162 (D. Md. 2019) ...................................................................16

*United States v. Callahan*,
  801 F.3d 606 (6th Cir. 2015) ......................................................................10, 11

*United States v. Dann*,
652 F.3d 1160 (9th Cir. 2011) ........................................................9, 11

*United States v. Kalu*,
791 F.3d 1194 (10th Cir. 2015) ...........................................................13

*United States v. Sabhnani*,
599 F.3d 215 (2d Cir. 2010)..................................................................12

*Wood v. Southside Physician Network, LLC*,
2019 WL 3416665 (E.D. Va. July 29, 2019) ..........................................8

**Statutes**

8 U.S.C. § 1101(a)(15)(H)(ii)(b)...................................................................3

18 U.S.C. § 1589(a) ......................................................................................10

18 U.S.C. § 1589(a)(1)...................................................................................12

18 U.S.C. § 1589(a)(1)-(4)..............................................................................10

18 U.S.C. § 1589(c)(2)......................................................................10, 11, 13

18 U.S.C. § 1595 .............................................................................................9

29 U.S.C. § 211(c) ........................................................................................17

Fair Labor Standards Act ("FLSA") .............................................1, 16, 17

FLSA......................................................................................1, 2, 18, 19

Plaintiffs' Trafficking Victims Protection Act ...........................................1

Trafficking Victims Protection Act ("TVPA"),
18 U.S.C. § 1589 et seq...............................................9, 12, 13, 14

TVPA .................................................................................... *passim*

**Other Authorities**

20 C.F.R. § 655.5, 655.20 .............................................................................3

29 C.F.R. § 503.16........................................................................................3

29 C.F.R. § 516.2(a)(5)–(12) .......................................................................17

29 C.F.R. § 516.5(a)......................................................................................17

Rule 8(a)............................................................................................................16

Rule 12(b)(6).....................................................................................................15

**INTRODUCTION**

This is a case about a group of low-income Mexican laborers who sought honest work in the United States through the H-2B visa system but were promptly taken advantage of and victimized by Defendants. Defendants Monterrey Concrete, LLC, and Jose De La Rosa traveled to Monterrey, Mexico, met with Plaintiffs, and agreed to provide them with 40-hour per week jobs in Virginia as concrete masons and cement finishers, along with room and board, tools, and transportation to-and-from Virginia. Immediately after Plaintiffs arrived in the United States, however, and in violation of the H-2B regulations Defendants were required to follow, Defendants subjected Plaintiffs to vicious threats and intimidation, squalid conditions in their work environment and living quarters alike, and pay practices that constitute textbook violations of the Fair Labor Standards Act ("FLSA").

Defendants' arguments for dismissal are meritless. On each of the issues they raise, Defendants either ignore relevant and controlling precedent altogether, or affirmatively mischaracterize that precedent. Defendants' choice-of-law challenge to Plaintiffs' contract and quasi-contract claims overlooks black-letter law providing that where a contract is to be performed in a particular location, the law of that place of performance (here Virginia) governs. *See*, *e.g.*, *Trbovich v. Garcia*, 2016 WL 10514833, at *2 (E.D. Va. Aug. 24, 2016) (Payne, J.).

To support dismissal of Plaintiffs' Trafficking Victims Protection Act ("TVPA") claims, Defendants rely heavily on *Muchira v. Al-Rawaf*, 850 F.3d 605 (4th Cir. 2017), and *Fei Guan v. Bing Ran*, 2017 WL 2881363 (E.D. Va. July 6, 2017). But the facts in those cases are nothing like those here. In *Muchira*, defendants "never physically abused [plaintiff], nor did they ever threaten her or her loved ones with physical harm," "never physically restrained or impeded her from leaving her employment situation," and "never threatened her with arrest, deportation, adverse

immigration consequences, or other legal consequences if she left their employment." 850 F.3d at 619-20. Here, Defendants did all of those things and much more. *Fei Guan* was an intra-family dispute between a brother and sister over employment at the family-owned consulting firm, where the plaintiff continued to voluntarily work—even through the litigation. Simply put, the facts of those cases bear no resemblance to the litany of physical mistreatment, restraint, and intimidation inflicted by Defendants upon Plaintiffs in this case—actions that easily qualify as actionable under well-established TVPA precedent.

As for the FLSA claim, Defendants' argument that Plaintiffs did not sufficiently plead the details of their hours and missed pay ignores the central precedent in this Circuit. *See Hall v. DIRECTV, LLC*, 846 F.3d 757, 776-77 (4th Cir. 2017) (rejecting the argument that the complaint must contain a "detailed accounting of the number of uncompensated hours [plaintiffs] worked" or "identify a particular week in which they worked uncompensated overtime hours"). Defendants' statute-of-limitations argument is likewise foreclosed by Fourth Circuit precedent holding that where, as here, the employer failed to post statutory notice of workers' rights, the statute is tolled and the complaint cannot be dismissed on limitations grounds at the pleadings stage. *Cruz v. Maypa*, 773 F.3d 138, 146-48 (4th Cir. 2014).

This case calls out for discovery and trial, not flimsy pleading arguments based on mischaracterizations of case law and unwillingness to confront Plaintiffs' actual allegations. The Court should deny the motion to dismiss.

## FACTS

Plaintiffs Arturo Esparza Macias, Victor de los Reyes Rabanales, Cesar Ivan Esparza Aguilar, Jaime Marquez Esparza, Manuel Marquez Esparza, Jacobo Esparza Aguilar, Jose Luis Diaz Gomez, Ricardo Guadalupe Gomez Torres, Rodrigo Canales Salazar, Bladimir Guadalupe

Macias Esparza, Catarino Odon Hernandez, Francisco Odon Hernandez, Reuel Eugenio Villagrana Canales, Alonso Cisneros Ayala, Leopoldo Gonzales, Luis Carlos Romero, and Uriel Cisneros ("Plaintiffs") are seventeen Mexican workers who came to the United States to work under the H-2A (Mr. Villagrana Canales) and H-2B programs. Defendant Monterrey Concrete is a concrete contracting business located in the Henrico, Virginia area, and Defendant Jose De La Rosa owns and oversees Monterrey's operations. Between 2014 and 2018, Defendants successfully filed applications with the Department of Labor ("DOL") to employ workers for periods of about nine months under the H-2B visa program. Compl. ¶¶ 28-32.

The H-2B visa program allows companies to hire foreign "unskilled workers" to perform nonagricultural work in the United States for temporary periods of time. 8 U.S.C. § 1101(a)(15)(H)(ii)(b). Under this program, employers are required to, among other things, (1) comply with applicable federal, state, and local employment related laws, (2) pay the higher of the prevailing wage for the occupation or the minimum wage, (3) provide all tools and supplies free of charge, (4) not hold or confiscate employees' passports or visas, (5) not retaliate against workers for asserting their H-2B program rights and protections, (6) provide employees a "job order" containing all material terms and conditions of employment, and (7) display a Department of Labor poster at the job site informing workers of their H-2B rights. 20 C.F.R. § 655.5, 655.20; 29 C.F.R. § 503.16.

Under the H-2B requirements, Plaintiffs' job orders described their work as that of concrete masons and cement finishers, workdays of 8:00 AM to 4:00 PM with a one-hour lunch break, and certain wages and overtime pay as provided for in the statute. Compl. ¶¶ 28-31. By participating in the program, Defendants also agreed to abide by all H-2B statutory requirements, including to

comply with federal and state employment laws and regulations, not to exceed the scope of the job orders, and to provide for free all necessary equipment.  *Id.* ¶ 33

After executing these applications with DOL, Defendants contacted the individual Plaintiffs in Mexico and offered them employment in Virginia through the H-2B program, including suitable housing, meals, and the terms and conditions described above and in the job orders.  *Id.* ¶¶ 2, 35-37.  Plaintiffs accepted Defendants' offers of employment under those terms and reported to the United States consulate in Monterrey, Mexico, where Plaintiffs reviewed their job orders and processed their visas.  *Id.* ¶¶ 38-41.  In addition, Mr. De La Rosa recruited Mr. Villagrana Canales by arranging for him to initially to work in a tobacco field in Tennessee under an H-2A visa through a company called Perez Labor Contractors.  *Id.* ¶ 5.

Upon Plaintiffs' arrival in Virginia, Defendants announced that Plaintiffs would be required to work as much as Mr. De La Rosa told them to work—but that they would only be paid for 40 hours of work per week.  *Id.* ¶¶ 42-44.  Defendants then confiscated passports from 14 of the 17 Plaintiffs and Social Security cards from six Plaintiffs.  *Id.* ¶¶ 47-48.  Plaintiffs who asked Mr. De La Rosa to return their documents were told that he was "keeping it safe" or that they did not need the documents.  *Id.*  Plaintiffs were also moved into grossly overcrowded and substandard housing.  *Id.* ¶ 45.

Plaintiffs worked 70-to-80 hours each week and sometimes more, including some instances of working overnight or nearly 24 hours straight.  *Id.* ¶¶ 43, 49, 55.  Yet Plaintiffs were rarely paid overtime and instead were almost always paid at a flat rate, in an amount reflecting what they would have received for working 40 hours per week.  *Id.* ¶¶ 49-54.  For example, Mr. Villagrana Canales was never paid for two days of labor in a tobacco field.  *Id.* ¶¶ 106-107.  Defendants also refused to pay Mr. Catarino Odón Hernandéz for three days of labor, and even demanded the *return*

of $1,300 of his wages, falsely claiming that he had performed insufficiently. *Id.* ¶ 279. Defendants typically did not give Plaintiffs lunch breaks or water while working. *Id.* ¶ 73-74.

Defendants compelled Plaintiffs to continue to work for them through threats and coercion. For instance, Defendants demanded that several Plaintiffs overstay their visas and punished those who refused by firing them prematurely. *Id.* ¶¶ 66, 98, 242. Similarly, one month into Mr. Reyes Rabanales' employment, Mr. De La Rosa ordered him to overstay his visa and fired him when he refused. *Id.* ¶ 242. Mr. De La Rosa then locked him in a room and ordered others to guard the door. *Id.* ¶ 243. He later forced him into a car, drove him from Virginia to Texas, and abandoned him at a Walmart near the U.S.-Mexico border. *Id.* ¶¶ 243-44. Because Mr. De La Rosa had previously confiscated his immigration documents and refused to return them, he was arrested by Mexican authorities. *Id.* ¶ 245.

Further, aside from withholding workers' passports and Social Security cards, Mr. De La Rosa threatened to suspend their visas, have them sent to jail, and report them to immigration authorities if they did not obey him. *Id.* ¶¶ 62, 102. Defendants also forced Plaintiffs to perform work beyond the scope of their job orders, telling them that Mr. De La Rosa had "rented" them out." *Id.* ¶¶ 69. If any of the workers complained, Mr. De La Rosa would sometimes say that he was free to leave—*if* he paid Mr. De La Rosa $10,000 to $12,000 to "buy his freedom." *Id.* ¶¶ 61, 111, 156.

Mr. De La Rosa also threatened Plaintiffs by talking about his connections to dangerous groups and people in Mexico and suggesting that their families would be in danger if they stood up for themselves. *Id.* ¶¶ 61, 136. For example, Mr. De La Rosa told Mr. Jacobo Esparza Aguilar about a former employee who contacted an attorney and whose family in Mexico was subsequently threatened by Mr. De La Rosa's associates. *Id.* ¶ 136.

More than once, in order to show off his dominance over his employees, Mr. De La Rosa brought his associates into his garage, where Plaintiffs were sleeping, in the middle of the night. *Id.* ¶ 68. Mr. De La Rosa would wake-up Plaintiffs and order them to stand in a line, and then brag to his associates about how he had brought Plaintiffs under his command. *Id.*

On another occasion, Mr. De La Rosa punched and slapped Mr. Cesar Ivan Esparza. *Id.* ¶ 183. Mr. Diaz Gomez and Mr. Manuel Marquez Esparza witnessed Mr. De La Rosa's physical assault of their coworker and were further intimidated into obedience as a result. *Id.* ¶¶ 122, 208.

Defendants engaged in all of this conduct with the purpose and effect of coercing Plaintiffs into continuing to work for Defendants and making them feel unable to escape Defendants' control. *See, e.g.*, *id.* ¶¶ 102, 125, 137.

Defendants also forced Plaintiffs to complete labor they never agreed to. *Id.* ¶ 71. Plaintiffs performed tasks for Mr. De La Rosa and his family members on a personal basis. *Id.* Defendants ordered Plaintiffs to perform various kinds of manual labor, including improving Mr. De La Rosa's and his brother's homes; shoveling snow, cooking, and gardening at a local church; remodeling Mr. De La Rosa's restaurant; cleaning horse stables and restocking horse food at the state fair; and other odd jobs. *Id.* ¶ 72.

Instead of the decent housing and meals that Defendants agreed to provide as part of Plaintiffs' employment contracts, Defendants required Plaintiffs to live in different living arrangements, all of which were inhumane. *Id.* ¶¶ 76-78. At various points, up to approximately 30 workers at a time lived and slept in a garage on Mr. De La Rosa's property. *Id.* ¶¶ 79-81. In 2017, after requiring Plaintiffs to work on a small house on his property, Mr. De La Rosa ordered certain Plaintiffs to move into that small house. *Id.* ¶ 83. Between 12 and 30 workers lived there,

depending on the season, and it had one bathroom with no water pressure—requiring workers to use a garden hose outside to attempt to bathe—and did not have a stove for cooking. *Id.* ¶¶ 84-85.

Defendants charged the Plaintiffs living in the house $100 per month each for rent and $250 per month in total for electricity, although Plaintiffs never authorized these charges. *Id.* ¶¶ 86-87. Other Plaintiffs were housed in a trailer, and one was charged $100 per month for rent. *Id.* ¶ 89. Plaintiffs were charged $50 per week for food, which was of insufficient quantity and hunted by a family friend. *Id.* ¶ 59.

Further, inconsistent with the parties' agreements and federal H-2B laws, Defendants charged Plaintiffs for their transportation, meals, and lodging traveling from Mexico to Virginia; for equipment necessary to their work; and for meals, lodging, and utilities while working for Defendants. *Id.* ¶¶ 57-60.

## ARGUMENT

### I. Plaintiffs' Contract and Quasi-Contract Claims Are Governed By Virginia Law

Plaintiffs allege that Defendants breached the parties' contracts, and also engaged in conduct giving rise to quantum meruit and unjust enrichment relief claims by failing to pay Plaintiffs the agreed upon amount for their work, not providing adequate housing, and not compensating Plaintiffs for all of the hours they worked. Defendants' sole argument is that these claims fail because they are governed by Mexican law, whereas the applicable counts refer to Virginia law. *See* Doc. 13 ("Defs. Mem.") at 13-14. Defendants are wrong.

Under well-settled choice of law principles, Virginia law applies to Plaintiffs' contract and quasi-contract claims.[1] While in certain circumstances "'[t]he *nature, validity and interpretation*

---

[1] Virginia's choice of law rules determine which substantive law controls both Plaintiffs' breach of contract and quasi-contract claims. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Precision Pipeline, LLC v. Dominion Transmission, Inc.*, 2017 WL 1100903, at *5 (E.D. Va. Mar. 23, 2017).

of contracts are governed by the law of the place where made[,]'" *Wood v. Southside Physician Network, LLC*, 2019 WL 3416665, at *4 (E.D. Va. July 29, 2019) (emphasis added) (citation omitted), for claims "arising in connection with the *performance* of a contract . . . the law of the place of performance governs." *Trbovich v. Garcia*, 2016 WL 10514833, at *2 (E.D. Va. Aug. 24, 2016) (Payne, J.) (emphasis added) (citations and internal quotation marks omitted). Indeed, it is "settled Virginia law" that where a contract is made in one jurisdiction but performed in another, the law of the place of performance governs the contract." *Hunter Innovations Co. v. Travelers Indem. Co. of Conn.*, 753 F. Supp. 2d 597, 603 (E.D. Va. 2010). "'[I]f the parties merely sign [a] contract in one jurisdiction, but, at the time of execution, the parties intend for the contract to be fully performed in another, specific jurisdiction, the law of the place of performance . . . will be applied . . . .'" *Wood*, 2019 WL 3416665 at *4 (quoting *Black v. Powers*, 628 S.E.2d 546, 554 (Va. 2006)); *accord Thomaz v. It's My Party, Inc.*, 2013 WL 1450803, at *5 (E.D. Va. Apr. 9, 2013) ("A contract breach is a performance issue and thus, is regulated by the law of the place of performance.").[2]

Here, although Plaintiffs entered into their contracts while outside of Virginia, the parties clearly and fully intended for those contracts to be fully performed in Virginia—Plaintiffs agreed to work in Virginia and Defendants agreed to pay wages and provide housing in Virginia. *See*

---

[2]    The same choice-of-law analysis applies to the quasi-contract claims. *Scott & Stringfellow, LLC v. AIG Commercial Equip. Fin., Inc.*, 2011 WL 1348324, at *4 (E.D. Va. Apr. 8, 2011) ("[C]ourts within the Fourth Circuit generally treat quasi-contractual claims as arising out of contract"). Some courts in Virginia have treated unjust enrichment claims as sounding in tort. Defendants do not contend that the unjust enrichment claims here sound in tort, but that would not make a difference to the choice-of-law outcome in any event. For tort claims, Virginia applies the *lex loci delicti* rule, meaning the law of the place of the wrong controls. *See, e.g.*, *G4I Consulting, Inc. v. Nana Servs., LLC*, 2012 WL 1677985, at *4 (E.D. Va. May 14, 2012). Here, the place of the wrong and the place of performance are the same: Virginia.

Compl. ¶¶ 37-39. Similarly, Plaintiffs' breach of contract and quasi-contract claims arise from issues of performance in Virginia: among other things, Defendants failed to pay Plaintiffs the agreed-upon wages in Virginia; failed to provide Plaintiffs the agreed-upon housing, meals, and tools in Virginia; and exceeded the agreed-upon scope of work in Virginia. *Id.* ¶¶ 50-59. Therefore, under applicable choice of law rules, the law of the place of performance—Virginia— governs these claims.[3]

## II. The Complaint States TVPA Claims

Congress enacted the TVPA "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011) (citation and internal quotation marks omitted). "Congress intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion" and through "physical or legal coercion." *United States v. Dann*, 652 F.3d 1160, 1169 (9th Cir. 2011) (citation and internal quotation marks omitted). The statute provides a civil cause of action for victims against perpetrators. 18 U.S.C. § 1595.

In particular, the TVPA prohibits "knowingly provid[ing] or obtain[ing] the labor or services of a person" by any one of the following means:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or

---

[3] If the Court were to find that Mexican law applies to any of Plaintiffs' contract or quasi-contract claims (which it does not), the appropriate remedy would not be dismissal with prejudice, but dismissal with leave to amend to plead contract or quasi-contract claims under Mexican law.

> (4) by means of any scheme, plan, or pattern intended to cause the
> person to believe that, if that person did not perform such labor or
> services, that person or another person would suffer serious harm or
> physical restraint.

18 U.S.C. § 1589(a)(1)-(4). "Serious harm" includes financial, reputational, or psychological harm. *Id.* § 1589(a)(2)-(4) & (c)(2). The statute provides that serious harm is to be evaluated "under all the surrounding circumstances" and, in particular, from the perspective of "a reasonable person of the same background and in the same circumstances" as the plaintiff. *Id.* § 1589(c)(2). The removal, confiscation, or even possession of a plaintiff's passport or other immigration document in the course of violating the forced-labor statute constitutes an independent violation. *Id.* § 1592.

Here, the Complaint adequately alleges violations of the TVPA's ban on forced labor and trafficking. To plead such claims, a plaintiff must allege that his labor was knowingly obtained by any of the aforementioned means described in 18 U.S.C. § 1589(a), or a combination of them. As shown below, Defendants violated these prohibitions in myriad ways that go far beyond a "bad employee-employer relationship," *see* Defs. Mem. at 2. Any of these actions alone would be sufficient; together they remove any possible doubt that Plaintiffs' TVPA claims are sufficiently pleaded to proceed.

**Retention of Plaintiffs' Passports and Other Identification**. It is well-established that "[t]he confiscation of an immigrant's passport and threats of arrest are common threats of legal process resorted to by traffickers and others who seek to instill fear in persons and force them to labor against their will." *Muchira v. Al-Rawaf*, 850 F.3d 605, 623 (4th Cir. 2017); *see*, *e.g.*, *United States v. Callahan*, 801 F.3d 606, 615, 620 (6th Cir. 2015) (defendants ordered developmentally-disabled victim to assault her minor daughter, filmed the beating, and subsequently threatened to call law enforcement and have the victim's daughter taken away if she did not continue to comply

with their demands); *United States v. Dann*, 652 F.3d 1160, 1172 (9th Cir. 2011) (holding that employer retaining custody of worker's passport and Peruvian identification supported her forced labor conviction).

Here, Defendants retained Plaintiffs' passports and/or social security cards and refused to return them when Plaintiffs asked. Compl. ¶¶ 47-48. This retention of the documents instilled fear and coerced Plaintiffs into continuing to work for Defendants. *Id.* ¶¶ 90-284.[4]

***Physical Assault: Punching and Slapping***. "[S]erious harm" expressly includes physical harm. 18 U.S.C. § 1589(c)(2); *see, e.g.*, *United States v. Callahan*, 801 F.3d 606, 620 (6th Cir. 2015) (holding that plaintiff's testimony that she obeyed the defendant's orders out of fear he may hurt her, because he had done so in the past when she did not complete her chores within the allotted time, was "evidence that [d]efendant knowingly coerced [plaintiff] to provide labor and services").

Defendant De La Rosa physically assaulted Mr. Cesar Ivan Esparza Aguilar by punching and slapping him. Compl. ¶ 183. At least two other Plaintiffs (Manuel Marquez Esparza and Jose Luis Diaz Gomez) witnessed this assault, and that word of De La Rosa's assault spread to other Plaintiffs. *Id.* ¶¶ 122, 208. This assault caused Plaintiffs to feel coerced to continue working for Defendants. *Id.* ¶¶ 90-284. These allegations fall directly within the TVPA's prohibition on

---

[4]      In *Muchira*, at the summary judgment stage, the plaintiff's "evidence" that the employer "coerced [plaintiff] into remaining in their employment . . . by withholding their passport" was found insufficient. 850 F.3d at 623. However, the Fourth Circuit confirmed in the surrounding discussion that withholding a passport to coerce continued employment can constitute an actionable violation of the TVPA. Plaintiffs' allegations here are sufficient to withstand dismissal at the pleadings stage, and Defendants will be free to renew their argument at summary judgment after Plaintiffs have had an opportunity to develop and present evidence—just as the plaintiff was permitted to do at the motion to dismiss stage in *Muchira*.

"force, threats of force, physical restraint, or threats of physical restraint" to obtain a person's labor.  18 U.S.C. § 1589(a)(1).

**_Threats of Connections to Dangerous People in Mexico_**.  Courts have also recognized that threats of harm to the plaintiff or the plaintiff's family if they try to leave forced employment violate the TVPA.  _See, e.g._, _United States v. Sabhnani_, 599 F.3d 215, 226 (2d Cir. 2010) (threats of harm to children in other country if plaintiffs resisted physical abuse); _Saraswat v. Jayaraman_, 2016 WL 5408115, at *4 (E.D.N.Y. Sept. 28, 2016) (observing that the TVPA "is intended to address the increasingly subtle methods of traffickers who place their victims in modern-day slavery, such as where traffickers threaten harm to third persons").

Defendant De La Rosa threatened Plaintiffs with "connections to dangerous groups and people in Mexico."  Compl. ¶ 61.  Specifically, De La Rosa told Plaintiff Jacobo Esparza Aguilar about the "dangerous" connections in Mexico and "suggested that Plaintiffs and their families would be in danger if they complained."  _Id._ ¶ 136.  Additionally, De La Rosa provided Mr. Esparza Aguilar of a specific example of a former employee of the Defendants whose "family in Mexico had indeed been threatened after the worker reached out to an attorney."  _Id._  Again, word of Defendant's threat spread to other Plaintiffs, and fourteen Plaintiffs allege that the threat of retaliation to their families in Mexico caused them to feel coerced to continue working for Defendants.  _Id._ ¶¶ 90-284.

Defendants attempt to downplay these serious threats as "hearsay."  Defs. Mem. at 23-24.  A hearsay objection can be raised at trial, but hearsay is never a valid ground for dismissal of a complaint at the pleadings stage.  _See Smith v. Rock_, 2013 WL 6633716, at *4 (N.D.N.Y. Dec. 17, 2013) ("[A] hearsay argument is irrelevant because the Court must accept the material facts alleged in the Complaint as true and construe all reasonable inferences in Plaintiff's favor for the purposes

of evaluating a 12(b)(6) motion."). These allegations fall within the heartland of actionable conduct under the TVPA and Defendants offer no basis for ignoring them.

***Demanding that Plaintiffs "Buy Their Freedom."*** "[S]erious harm" expressly includes the threat of financial harm. 18 U.S.C. § 1589(c)(2); *see*, *e.g.*, *United States v. Kalu*, 791 F.3d 1194, 1199, 1212 (10th Cir. 2015) (holding that employer's threats of financial ruin, in particular claiming the immigrant-employees would owe him $25,000 for breach of contract if they did not work, were among "the types of threats that could compel a reasonable person … to perform or continue performing labor or services in order to avoid incurring that harm" (citation and internal quotation marks omitted)).

Defendant De La Rosa threatened certain Plaintiffs with financial harm if they tried to leave Monterrey Concrete. When Plaintiffs told De La Rosa that they wanted to work somewhere else, De La Rosa said they would have to "buy [their] freedom" by paying De La Rosa $10,000 or $12,000. Compl. ¶¶ 61, 111, 156. Defendants' argument that, as H-2B visa employees, Plaintiffs "were not free to find other jobs," Defs. Mem. at 24, is irrelevant and non-responsive. If Plaintiffs were not actually free to find other jobs, that would just make De La Rosa's $10,000-$12,000 charge for "permission" to do so all the more indefensible.

***Threats of Jail, Immigration Authorities, and Deportation***. Courts consistently hold that threats of sending someone to jail, reporting them to immigration authorities, or having them deported may all constitute "abuse or threatened abuse of law or legal process" under the TVPA. *See*, *e.g.*, *Muchira*, 850 F.3d at 623 ("threats of arrest are common threats of legal process resorted to by traffickers and others who seek to instill fear in persons and force them to labor against their will"); *Aragon v. Che Ku*, 277 F. Supp. 3d 1055, 1070 (D. Minn. 2017) (denying motion to dismiss TVPA claim because plaintiffs "specifically allege that they were threatened with deportation");

*Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 115 (D.D.C. 2012) (denying a motion to dismiss a TVPA claim where plaintiff alleged that her employer "abused the legal process by threatening her with deportation should she fail to perform the work demanded of her").

Here, Defendant De La Rosa "threatened that he could have Plaintiffs' visas suspended, have Plaintiffs sent to jail or report Plaintiffs to immigration authorities if they did not do as he said." Compl. ¶ 62. He also filed false police reports alleging that Plaintiffs Jacobo, Cesar, Jose Luis, and Ricardo committed theft. *Id.* ¶¶ 134, 185, 210, 222. Multiple Plaintiffs individually pleaded that they felt coerced to continue to work for Defendants because of the "threats of immigration and criminal consequences." *See, e.g.*, *id.* ¶ 102.

Defendants attempt to put a benign face on their string of threats by characterizing them as "an accurate statement of immigration law." Defs. Mem. at 23. But Defendant De La Rosa threatened to "sen[d]" Plaintiffs "to jail" for disobedience. Compl. ¶ 62. Of course, no principle of immigration law in this country enables private citizens to send individuals to jail for disobeying their personal orders. Defendants' arguments are wholly without merit.

*Vigilante Deportation to Mexico*. Finally, Defendant De La Rosa threatened to send Plaintiffs back to Mexico and even acted on that threat in one instance, in a particularly egregious use of force. *Id.* ¶ 61. When Plaintiff Rabanales refused De La Rosa's demand that he overstay his visa, Mr. De La Rosa locked him in a room, forced workers to guard the door, then drove him forcibly to Texas and abandoned him at a Walmart near the U.S.-Mexico border. *Id.* ¶ 242-45. Mr. De La Rosa did not return Mr. Reyes Rabanales' passport, and as a result, Mr. Reyes Rabanales was arrested by Mexican authorities. *Id.* ¶ 242-45.

This episode cannot be brushed off as merely reflecting that Monterrey Concrete "did not want the unwilling labor of the Plaintiff." Defs. Mem. at 23. As Plaintiffs have alleged, De La

Rosa's confinement, involuntary transport, and abandonment without any personal identification or travel documents, were intended to "make an example" and coerce other employees of Monterrey Concrete into continuing to work for Defendants under Defendants' terms. Compl. ¶ 61. Nor is Defendants' argument that De La Rosa "followed the law in returning [Reyes Rabanales] to Mexico" a valid argument. Defs. Mem. at 23. The H-2B regulations do not permit, let alone require, private citizens to engage in vigilante deportations—forcibly confining and transporting an immigrant-employee and dumping them at a Walmart without returning his documents.

Contrary to Defendants' arguments, the Fourth Circuit's decision in *Muchira* offers them no aid. If anything, *Muchira* supports Plaintiffs, recognizing as it does that "[t]he confiscation of an immigrant's passport and threats of arrest are common threats of legal process resorted to by traffickers and others who seek to instill fear in persons and force them to labor against their will." *Muchira*, 850 F.3d at 623. While *Muchira* affirmed a summary judgment for the defendant employer, Defendants' reliance on that case ignores the vast difference in standards between Rule 12(b)(6) dismissal and summary judgment on a factual record after full discovery. *See Ali v. Khan*, 336 F. Supp. 3d 901, 908 (N.D. Ill. 2018) (rejecting reliance on *Muchira* at motion to dismiss stage because it "was decided after consideration of a full record at summary judgment"). Indeed, when *Muchira* was in the same procedural posture this case is now in, the court *denied* the defendants' motion to dismiss. *See Muchira v. Al-Rawaf*, No. 1:14-cv-00770-AJT-JFA, Doc. 31 (E.D. Va. Sept. 5, 2014).

Moreover, the facts of *Muchira* are essentially the opposite of those in this case:

> The [employing] family never physically abused [plaintiff], nor did they ever threaten her or her loved ones with physical harm. They never physically restrained or impeded her from leaving her employment situation. They never threatened her with arrest,

> deportation, adverse immigration consequences, or other legal consequences if she left their employment.

850 F.3d 605, 619-20.  As such, any "pressure" felt by the plaintiff to continue her employment was "not brought to bear by [the defendants]," and in fact, "there [was] no evidence that the [defendants] knew she wanted to leave."  *Id.* at 624.  In this case, the pressure felt by Plaintiffs was *directly attributable* to Defendants' actions.  Indeed, it was the intended result of Defendants' abusive conduct,  including but not limited to physical abuse, housing Plaintiffs in squalor, subjecting Plaintiffs to group humiliation, and a "self-help" deportation that involved dumping a Plaintiff in Mexico without a passport in order to make an example of him to other workers.

Defendants also rely on *Fei Guan v. Bing Ran*, 2017 WL 2881363 (E.D. Va. July 6, 2017), but that case is even further afield.  In *Fei Guan*, a brother sued his sister and her former husband, asserting claims related to his employment at their family consulting business at a salary of $75,000 per year—employment that the plaintiff voluntarily continued through the time of the litigation. "The only threats" were "warnings about the likelihood of losing his employment with AdSTM and his H-1B visa if [plaintiff] failed to make the payments to Defendant Ran each month."  *Id.* at *5.  Not surprisingly, the court found these allegations insufficient to sustain a TVPA claim.  That decision in no way supports dismissal of this case, which includes a litany of maltreatment and coercion that shocks the conscience.[5]

---

[5]      Defendants rely on a statement in the *Fei Guan* decision that "Plaintiff's theory of the case must not only pass the test of *Twombly* and *Iqbal*, but also must be strictly construed."  *Id.* at *4.  Contrary to Defendants' portrayal, there is no heightened pleading standard in TVPA cases. *See, e.g.*, *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 195 (D. Md. 2019) ("Unlike the heightened pleading standard applied to the FCA, TVPRA claims are governed by Rule 8(a), which requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.'").  The language in *Fei Guan* appears to conflate the rule of lenity, which is a principle of strict construction of *criminal statutes*, with pleading standards for civil complaints.

### III. The Complaint States FLSA Claims

Defendants argue that Plaintiffs' FLSA claims should be dismissed because "[n]one of the individual Plaintiffs allege a day, week, or month where they were not paid overtime or were not paid the minimum wage." Defs. Mem. at 26. This argument ignores directly on point Fourth Circuit precedent that undercuts it: *Hall v. DIRECTV, LLC*, 846 F.3d 757 (4th Cir. 2017).

In *Hall*, the Fourth Circuit adopted a "lenient approach" to pleading FLSA claims.[6] While plaintiffs must "do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay," they are not required to identify specific weeks or pay periods in which they worked uncompensated overtime hours. *Id.* at 777-78. Instead, a plaintiff may state a claim "by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Id.*[7]

---

[6] District courts in the Fourth Circuit have found that *Hall*'s lenient standard for FLSA overtime pleading applies to FLSA minimum-wage pleading as well. *See, e.g., Pizzella v. Peters*, 410 F. Supp. 3d 756, 763-65 (D. Md. 2019) (applying *Hall* to hold that plaintiff had adequately stated minimum-wage violations); *Allen v. Express Courier Int'l, Inc.*, 2018 WL 3577263, at *2 (W.D.N.C. July 25, 2018) (same).

[7] The Fourth Circuit's approach in *Hall* is in keeping with the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946). In *Mt Clemens Pottery*, the Court recognized that workers should not be punished merely because they may not be able to recall from memory their precise hours worked or wages paid during a two- or three-year limitations period. *See id.* at 687. After all, the Court reasoned, it is the employer, not the employee, who is in the best position to know the precise amount of work performed—not least because the employer has a statutory and regulatory duty to keep written records of hours worked, regular and overtime wages paid, and other employment practices. *See id.*; *see also* 29 U.S.C. § 211(c) (statutory duty to keep records); 29 C.F.R. § 516.2(a)(5)–(12) (regulatory duty to keep records) and 29 C.F.R. § 516.5(a) (records must be kept for three years). Thus, the Court held that FLSA plaintiffs can meet their burden of proof by producing evidence sufficient to allow the court to estimate their hours worked "as a matter of just and reasonable inference," even if the worker's evidence is not precise. *Mt. Clemens*, 328 U.S. at 687.

This Complaint easily meets *Hall*'s "lenient" standard. Plaintiffs allege they were compensated at the regular rate set out in the H-2B applications, *see* Compl. ¶ 49, that they regularly and routinely worked between 70 and 80 hours per week, *see id.* ¶¶ 4, 43, 55, and that, except in rare circumstances, they did not receive overtime compensation for hours worked in excess of 40 during those weeks, *see id.* at ¶ 49. These allegations are nearly identical to those in *Davis v. Abington Memorial Hospital*, 765 F.3d 236 (3d Cir. 2014), where the court observed that "a plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of those forty-hour weeks, would suffice." *Id.* at 243. In *Hall* the Fourth Circuit agreed that such allegations suffice. *See Hall*, 846 F.3d at 777. Plaintiffs' allegations here are similarly sufficient.

## IV. Plaintiffs' Claims Are Not Time-Barred

Finally, Defendants argue that the FLSA, contract, and quasi-contract claims of seven of the Plaintiffs are time-barred. This argument is also without merit.

*First*, the applicable limitations periods are three years. *See* Defs. Mem. at 27-28. Therefore, any claims that accrued after November 7, 2016 are timely. *See Heritage Disposal & Storage, L.L.C. v. VSE Corp.*, 2017 WL 361547, at *11 (E.D. Va. Jan. 24, 2017) (quantum meruit accrues "when the money due is not paid"); *Qin Yong Jin v. Any Floors, Inc.*, 2012 WL 777501, at *3 (E.D. Va. Mar. 5, 2012) ("A FLSA cause of action accrues each time a paycheck is issued or should have been issued."); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 576 (E.D. Va. 2004) (same for unjust enrichment).

Plaintiffs Manuel Marquez Esparza and Jacobo Esparza Aguilar worked for Defendants in 2017 and thus have timely claims. *See* Compl. ¶¶ 120 (Manuel Marquez Esparza), 130 (Jacobo Esparza Aguilar). Further, Plaintiffs Leopoldo Gonzales, Rodrigo Canales Salazar, Uriel Cisneros,

and Cisneros Ayala all worked for Defendants *during* 2016. *See id.* ¶¶ 94 (Leopoldo Gonzales), 142 (Rodrigo Canales Salazar), 153 (Uriel Cisneros), 163 (Cisneros Ayala). Further discovery is needed to determine whether the latter group worked for Defendants *on and after* November 7, 2016. Because "the Court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred," *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 113 (D.D.C. 2012), and here the face of the Complaint does not contain sufficient facts allowing the Court to make that determination. For that reason alone, these claims cannot be dismissed on limitations grounds.[8]

*Second*, all Plaintiffs' FLSA claims have been tolled because Defendants failed to display the statutorily-required poster informing Plaintiffs of their FLSA rights. Compl. ¶¶ 75, 309. Under Fourth Circuit precedent, an employer's failure to post such notice tolls the statute of limitations on FLSA claims. *See Cruz v. Maypa*, 773 F.3d 138, 147-48 (4th Cir. 2014); *Santamaria v. GL Constr., Inc.*, 2015 WL 13035523, at *3 (E.D. Va. Dec. 28, 2015). Thus, in *Cruz*, the Fourth Circuit reversed an order that had dismissed FLSA claims on the same limitations basis Defendants urge here.

Defendants assert that "*Cruz* did not establish a blanket exception to the FLSA statute of limitations when an employer fails to display a FLSA poster. Rather, *Cruz* considered the failure of the World Bank executive to display an FLSA poster in the broader context of equitable tolling." Defs. Mem. at 28-29. That is demonstrably wrong. The language from *Cruz* that Defendants rely on relates to discussion of the timeliness of *other* claims—not the FLSA claims. The discussion of tolling of the FLSA claims, appearing in Section IV at pages 146-147 of the opinion, rests solely and entirely on the employer's failure to post the FLSA notice.

---

[8]     To the extent some Plaintiffs may have some timely claims and some untimely claims, the Court need not reach that issue at the pleadings stage. That presents, at most, an issue pertaining to the admissibility of evidence at trial or calculation of damages.

*Third*, all Plaintiffs' state-law claims have also been tolled due to Defendants' oppressive conduct, which prevented and intimidated them from seeking redress for the violations of their rights. As the Fourth Circuit held in *Cruz*—discussing the *non*-FLSA claims—equitable tolling applies both where "the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant," and where "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Cruz*, 773 F.3d at 145. The Court held that allegations of confiscation of an employee's passport, isolation from others, monitoring of communications, and threats of imprisonment and deportation easily met this standard and established equitable tolling. *Id.* at 146; *accord Deressa v. Gobena*, 2006 WL 335629, at *3-4 (E.D. Va. Feb. 13, 2006) (holding that state-law claims were tolled while employee was held as a "virtual prisoner" threatened with deportation and forbidden to leave). These principles compel equitable tolling here, where Plaintiffs have made many of the same allegations as in *Cruz*.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss.

March 6, 2020                                  Respectfully submitted,

/s/ Preston M. Smith
Preston Smith (VA Bar # 86908)
Ian Hoffman (VA Bar # 75002)
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001-3743
Telephone: +1 202.942.6544
Facsimile: +1 202.942.5999
E-mail: preston.smith@arnoldporter.com
E-mail: ian.hoffman@arnoldporter.com

Rachel Colleen McFarland (VA Bar # 89391)
Jason Blair Yarashes (VA Bar # 90211)

Legal Aid Justice Center
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
Telephone:  434-977-0553
Fax: 434-977-0558
Email: rmcfarland@justice4all.org
Email: jasony@justice4all.org

Nicholas Cooper Marritz (VA Bar # 89795)
Simon Sandoval-Moshenberg (VA Bar # 77110)
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Telephone:  703-778-3450
Fax: 703-778-3454
Email: nicholas@justice4all.org
Email: simon@justice4all.org

*Counsel for Plaintiffs Arturo Macias et al.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this the 6th day of March 2020, I filed a copy of the foregoing with the

Court's electronic filing (CM/ECF) system, which caused a copy of the foregoing to be served

on all counsel of record.

/s/ Preston M. Smith
Preston M. Smith (VA Bar # 86908)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001-3743
Telephone: +1 202.942.6544
Facsimile: +1 202.942.5999
E-mail: preston.smith@arnoldporter.com

*Counsel for Plaintiffs Arturo Macias et al.*