**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| ARTURO ESPARZA MACIAS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-00830 |
| | ) | |
| MONTERREY CONCRETE, LLC, and | ) | |
| JOSE DE LA ROSA, | ) | |
| | ) | |
| Defendants. | ) | |

**MONTERREY CONCRETE, LLC AND JOSE DE LA ROSA'S REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants Monterrey Concrete, LLC, and Jose De La Rosa (collectively, "Monterrey Concrete"), by counsel, provide their Reply in Support of their Motion to Dismiss.

**INTRODUCTION**

Plaintiffs' Opposition suffers from the same defects as Plaintiffs' Complaint: hyperbole, contradiction and inaccuracy. Plaintiffs assert facts that are either not in the Complaint or are contradicted by the Complaint; examples abound, including the following:

- The Opposition asserts that Mr. De La Rosa agreed to provide **all Plaintiffs** with "room and board." Opp. at pp. 1; 6.

  - The Complaint states that fewer than half of Plaintiffs were promised housing and only three were offered board.[1]

- The Opposition asserts that Mr. De La Rosa "travelled to Monterrey, Mexico [and] met with Plaintiffs." Opp. at p. 1.

---

[1] The Complaint alleges that only eight Plaintiffs were promised housing. *See* Compl. ¶¶ 91 (Pl. No. 1); 117 (Pl. No. 3); 151 (Pl. No. 6); 161 (Pl. No. 7); 170 (Pl. No. 8); 229 (Pl. No. 13); 239 (Pl. No. 14); and 261 (Pl. No. 16). The Complaint alleges that only three Plaintiffs were promised food. *See id.* at ¶¶ 151 (Pl. No. 6); 161 (Pl. No. 7); and 239 (Pl. No. 14).

- o The Complaint states that "Mr. De La Rosa or one of his associates would contact Plaintiff," and later they would "talk to each other."  Compl. ¶ 35.[2]

- The Opposition asserts that Mr. De La Rosa "demanded that several Plaintiffs overstay their visas."  Opp. at p. 5.

  - o The Complaint 1) never alleges that **any** Plaintiff worked beyond his visa; 2) specifically alleges that each Plaintiff "worked under a H2B visa"; and 3) alleges that most — eleven out of seventeen — worked well short of the nine months allotted under their H-2B visas.[3]  *See* Compl. ¶¶ 94 (Pl. No. 1 – eight months on second H2-B visa); 120 (Pl. No. 3 – six months on second H2-B visa); 142 (Pl. No. 5 – seven months); 153 (Pl. No. 6 – five months); 163 (Pl. No. 7 – five months); 192 (Pl. No. 10 – eight months); 203 (Pl. No. 11 – eight months); 218 (Pl. No. 12 – eight months); 242 (Pl. No. 14 – one month); 249 (Pl. No. 15 – six months); and 275 (Pl. No. 17 – six months).

- The Opposition asserts that "**if any worker complained,**" Mr. De La Rosa would tell them he had to "buy his freedom."  Opp. at p. 5.

  - o The Complaint alleges that this happened only two times.  *See* Compl. ¶¶ 111, 156.

Plaintiffs insist on asserting facts that are either outside the Complaint, are exaggerations of the facts alleged, or are contradicted by the Complaint because they cannot plausibly allege a

---

[2] Monterrey Concrete vigorously contests **all** of the factual allegations in the Complaint but, for purposes of this Motion to Dismiss, identifies them for the Court.

[3] Monterey Concrete requested that the Court consider the H-2B visas for each Plaintiff as part of the Motion to Dismiss.  This Court has held that it may consider "'documents incorporated into the complaint by reference' [and] documents attached to the defendant's motion to dismiss if those documents are central to the plaintiff's claim or are 'sufficiently referred to in the complaint,' so long as the plaintiff does not challenge their authenticity."  *Fei Guan v. Bing Ran*, 2017 U.S. Dist. LEXIS 104809, at *9 (E.D. Va. July 6, 2017).  *See* Mem. in Supp., Doc. No. 13 at fn. 3; Exhibits 2 – 18.  Plaintiffs have not objected to the Court's consideration of the H-2B visas.  Therefore, Monterrey Concrete requests that the Court consider the visas.

factual scenario that supports their claims.   In short, Plaintiffs consistently overreach and exaggerate because the plain truth is not sufficient to "nudge [their] claims across the line from conceivable to plausible."  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009).[4]

Plaintiffs also misconstrue the law related to their contract, quasi-contract and Fair Labor Standards Act ("FLSA") claims.   Finally, Plaintiffs still fail to recognize that their Trafficking Victim Protection Act ("TVPA") allegations are "strictly construed" and must plausibly allege that Monterrey Concrete forced them to remain at Monterrey Concrete and labor against their will. The Complaint shows that most Plaintiffs abandoned their H-2B visas and quit Monterrey Concrete before their time was up.  In short, the TVPA allegations of poor working conditions and rude behavior do not plausibly allege that Plaintiffs could not leave Monterrey Concrete.

For the foregoing reasons, further explained below, Monterrey Concrete respectfully requests that the Court dismiss the Complaint.

## ARGUMENT

### I.   Plaintiffs Continue to Misread the Choice of Law.

#### A.   Plaintiffs Allege That the Contract Was to Be Partially Performed in Mexico.

Plaintiffs admit that "Plaintiffs entered into their contracts while outside Virginia" – meaning Mexico.  Opp. at p. 8.  The Complaint alleges that each Plaintiff entered into the contract[5] in Mexico.[6]  Plaintiffs also recognize that under the undisputed *lex loci contractus* choice of law provisions "the **nature**, **validity** and **interpretation** of contracts are governed by the law of the

---

[4] To the extent that the Court is inclined to consider Plaintiffs' factual assertions that are outside the Complaint, Monterrey Concrete respectfully request that the Court also consider Exhibit 1.
[5] As discussed below in § 1.B., Monterrey Concrete disputes that Plaintiffs did or could form a contract in Mexico based on the facts alleged in the Complaint.
[6] *See* Compl. ¶¶ 38 – 39; 93 (Pl. No. 1); 104 – 106 (Pl. No. 2); 119 (Pl. No. 3); 129 (Pl. No. 4); 141 (Pl. No. 5); 152 (Pl. No. 6); 162 (Pl. No. 7); 171 (Pl. No. 8); 179 (Pl. No. 9); 191 (Pl. No. 10); 205 (Pl. No. 11); 217 (Pl. No. 12); 230 (Pl. No. 13); 240 (Pl. No. 14); 251 (Pl. No. 15); 262 (Pl. No. 16) and 274 (Pl. No. 17).

place where made." Opp. at p. 7 -8 (citing *Wood v. Southside Physician Network, LLC*, 2019 U.S. Dist. LEXIS 126179 (E.D. Va. July 29, 2019) (emphasis in original)). Plaintiffs claim, however, that an exception to this rule overrides *lex loci contractus*. *See* Opp. at p. 8.

Plaintiffs fail, however, to read the case law related to this exception. Virginia courts carve out this narrow exception only for cases where the contract is intended to be **fully performed** in another jurisdiction:

> if the parties merely sign the contract in one jurisdiction, but, at the time of execution, the parties intend for the contract to be **fully performed in another, specific jurisdiction,** the law of the place of performance (the *lex loci solutionis*) will be applied rather than the law of the place where the contract was formally executed.

*Black v. Powers*, 48 Va. App. 113, 129, 628 S.E.2d 546, 554 (2006) (emphasis added).

Virginia courts are equally clear that "fully performed" means exactly that – full performance. Plaintiffs clearly allege that Monterrey Concrete's contractual obligations began **in Mexico** and allege that Monterrey Concrete breached those obligations **in Mexico**.

Plaintiffs allege that the contract required Monterrey Concrete to pay for travel, food and lodging from their hometown in Zacatecas, Mexico to Monterrey Mexico, (nearly 300 miles away) and also to pay for travel, food and lodging from Monterrey Mexico to Virginia.[7] The Plaintiffs allege contract damages for Monterrey Concrete's alleged breach of this alleged contract term. *See* Compl. ¶ 320. Plaintiffs also allege that Monterrey Concrete required Plaintiffs to obtain passports and undergo consular processing in Monterrey, Mexico. *Id.* at ¶ 39. Consequently, the Plaintiffs plainly allege that the contract required partial performance by both Plaintiffs and Monterrey Concrete in Mexico.

---

[7] *See* Compl. ¶¶ 95 (Pl. No. 1); 121 (Pl. No. 3); 131 (Pl. No. 4); 143 (Pl. No. 5); 154 (Pl. No. 6); 164 (Pl. No. 7); 173 (Pl. No. 8); 181 (Pl. No. 9); 193 (Pl. No. 10); 206 (Pl. No. 11); 219 (Pl. No. 12); 231 (Pl. No. 13); 241 (Pl. No. 14); 251 (Pl. No. 15); 264 (Pl. No. 16); 276 (Pl. No. 17).

Virginia courts specifically hold that partial performance in the *lex loci contractus* jurisdiction negates the narrow exception relied upon by Plaintiff. This point was made clear by the Virginia Court of Appeals in *Black v. Powers*.

In *Black*, a Virginia lawyer (Powers) and his secretary (Black) planned to get married in 1979 and live in Virginia – their longtime home. 48 Va. App. at 120; 628 S.E. 2d at 550. In 1982, Powers and Black bought a house together in Virginia. *Id.* In July 1983, they flew to the Virgin Islands to get married. *Id.* The day before the wedding, Black signed a prenuptial agreement that Powers had provided to her several months before. *Id.* The next day, Black and Powers were married. *Id.* After the wedding, they returned to their home in Virginia and lived as husband and wife for eighteen years. *Id.* at 123; 628 S.E.2d at 551.

In 2001, Black filed for divorce in Virginia. *Id.* Powers subsequently asserted the prenuptial agreement as a defense to equitable distribution. *Id.* At trial, the circuit court, *sua sponte* raised the issue of which law applied to the prenuptial agreement – the Virgin Islands or Virginia. *Id.* at 125; 628 S.E.2d at 552. The court ultimately ruled that Virginia law applied because the "place of performance" of the marriage was Virginia. *Id.*

On appeal, the Virginia Court of Appeals carefully examined the *lex loci contractus* doctrine and concluded that the doctrine has been generally and consistently applied since 1799:

> It is a long-standing rule in Virginia **that the nature, validity and interpretation of contracts are governed by the law of the place where the contract was made**. Thus, when determining the validity of a contract, Virginia courts will generally apply the law of the place where the contract was executed (the *lex loci contractus*).

*Id.* at 128, 628 S.E.2d at 554 (citations omitted).

The Court of Appeals found three narrow exceptions to the *lex loci contractus* doctrine. The first exception is where the parties specify a choice of law. The third is where substantive law

of the *lex loci contractus* jurisdiction offends the public policy of Virginia and the "second, if the parties merely sign the contract in one jurisdiction, but, at the time of execution, the parties intend for the contract to be **fully performed** in another, specific jurisdiction, the law of the place of performance (the *lex loci solutionis*) will be applied rather than the law of the place where the contract was formally executed." *Id.* at 129, 628 S.E. 2d at 554 (emphasis added).

Applying the law to the facts, the Virginia Court of Appeals held that, although the prenuptial agreement governed the distribution of assets upon divorce, and the parties intended to live in Virginia as a married couple (where they had lived for years before), the prenuptial agreement was "partially performed" in the Virgin Islands because the couple was married there. That fact that the wedding took place in the Virgin Islands, alone, negated the exception:

> Here, however, **in addition to signing the prenuptial agreement in the Virgin Islands, the parties partially performed the contract in that jurisdiction**. Specifically, according to terms of the contract, the parties agreed to refrain from certain postnuptial conduct in consideration of "the marriage." **By exchanging wedding vows in the Virgin Islands, the parties tendered the required consideration, thereby performing a portion of their contractual obligations**. Thus, because the marriage occurred in the Virgin Islands, the prenuptial agreement was **both executed and partially performed in that jurisdiction**. Accordingly, we hold that the second exception to Virginia's traditional choice-of-law rules— which permits application of the law of the place of performance if *different* from the law of the place of formal execution—**is inapplicable under the circumstances of this case.**

*Id.* at 133; 628 S.E.2d at 556 (emphasis added).

In this case, Plaintiffs admit they entered into the alleged contracts in Mexico. They further allege that the contracts obligated Monterrey Concrete to pay their travel, lodging and food from their hometown in Zacatecas, Mexico to Monterrey, Mexico, nearly 300 miles away. They further allege that they were obligated to obtain passports and complete consular processing in Monterrey, Mexico. Finally, they allege that Monterrey Concrete was obligated to pay their travel, food and lodging from Monterrey, Mexico to Virginia. Because all of these steps had to be performed in

Mexico, the contract, as alleged, was partially performed in Mexico and the narrow exception to *lex loci contractus* does not apply.  If a Virgin Island wedding was sufficient partial performance in *Black v. Powers* to outweigh eighteen years of marriage in Virginia, then Plaintiffs' allegations of travel, food, lodging and consular processing in Mexico constitute "partial performance" in this case. Plaintiff never address this point in their Opposition.

**B.     Plaintiffs Never Allege That They Can Make An Oral Transnational Employment Contract Under Mexican Law.**

Plaintiffs assume, based solely on their *ipse dixit*, that they entered into a binding, transnational, oral employment contract with Monterrey Concrete in Mexico.[8]  Plaintiffs try to elide their failure to plead by claiming that Virginia law applies to both the formation and performance of the contract.  *See* Opp. at pp. 7 – 8.  Plaintiffs are wrong.

The law of the place of formation determines the adequacy of formation: "Under Virginia law, questions of interpretation, validity, and enforceability of a contract are determined by the law where the contract was made." *Johnson v. MPR Assocs.*, 894 F. Supp. 255, 257 n.1 (E.D. Va. 1994) (citations omitted); *see also Southside Physician Network, LLC*, 2019 U.S. Dist. LEXIS 126179, at *11 (E.D. Va. July 29, 2019) ("The nature, validity and interpretation of contracts are governed by the law of the place where made."); *Johnson v. Carmax, Inc.*, 2010 U.S. Dist. LEXIS 70700, at *7 (E.D. Va. July 14, 2010) ("Virginia's conflicts rules apply, which mandate that the law of the place where the contract was made governs questions of interpretation, validity, and enforceability of a contract."); *Fei Co. v. Cambridge Glob. Servs.,* 2010 U.S. Dist. LEXIS 75978, at *9 (E.D. Va. July 7, 2010) ("In Virginia, the making of a contract is governed by the place where the contract is made.").

---

[8] *See* Compl. ¶¶ 38 – 39; 93 (Pl. No. 1); 104 – 106 (Pl. No. 2); 119 (Pl. No. 3); 129 (Pl. No. 4); 141 (Pl. No. 5); 152 (Pl. No. 6); 162 (Pl. No. 7); 171 (Pl. No. 8); 179 (Pl. No. 9); 191 (Pl. No. 10); 205 (Pl. No. 11); 217 (Pl. No. 12); 230 (Pl. No. 13); 240 (Pl. No. 14); 251 (Pl. No. 15); 262 (Pl. No. 16) and 274 (Pl. No. 17).

In this case, the contract was made in Mexico. Plaintiffs never allege that they could form a valid, enforceable transnational, oral, labor contract under the law of Mexico. Plaintiffs never allege that an unappointed Virginia LLC can form a binding oral contract with a Mexican national in Mexico. Plaintiffs never allege that an oral promise of performance is adequate consideration under Mexican law. Plaintiffs never even allege the elements of a binding contract under Mexican law. As noted in Monterrey Concrete's Memorandum in Support, Mexican law, based on the Napoleonic Code, is far more complicated than Plaintiffs assume. *See* Mem. in Supp. at p. 14.

Instead, Plaintiffs merely assume that "Virginia Common Law" applies to the formation of each Plaintiff's contract. In fact, they say so in their Complaint. *See* Compl. at Count IV. Plaintiffs are wrong. Mexican law governs the "making of the contract" and defines the "nature, validity and enforceability." *Johnson*, 2010 U.S. Dist. LEXIS 70700, at *7.

Because Plaintiffs have failed to plead the "nature, validity and enforceability" of the contracts under Mexican law, Monterrey Concrete respectfully requests that the Court dismiss Plaintiffs' contract claim – Count IV. Similarly, as Plaintiffs concede, their quasi-contract claims – Counts V and VI – are governed by the same principles. Monterrey Concrete respectfully request that those claims be dismissed as well.

## II.    The Weight of Fourth Circuit Authority Supports Dismissal of Plaintiffs' FLSA Overtime and Minimum Wage Claims.

### A.    Plaintiffs Misread *Hall v. DIRECTTV, LLC* 846 F. 3d 757 (4th Cir. 2017).

Plaintiffs' FLSA allegations are simple boilerplate:

306.    Defendants violated the FLSA's minimum-wage provision, 29 U.S.C. § 206(a), by failing to pay Plaintiffs at least $7.25 for every hour of work in each workweek, to Plaintiffs' harm, and are liable to Plaintiffs in damages.

307.    Defendants violated the FLSA's overtime provision, 29 U.S.C. § 207(a), by failing to pay Plaintiffs a time-and-a-half overtime premium for their weekly hours worked over 40, to Plaintiffs' harm, and are liable to Plaintiffs in damages.

Compl. ¶¶ 306 – 307.

Plaintiffs' "further factual enhancement" is equally superficial: "And throughout their employment, Defendants regularly required Plaintiffs to work at least 70 to 80 hours a week, and sometimes even more than that. Defendants also occasionally required Plaintiffs to work overnight, sometimes up to nearly 24 hours straight." *Id.* at ¶ 43.

Plaintiffs claim that this boilerplate is adequate to defeat a Motion to Dismiss under *Hall v. DIRECTTV, LLC*, 846 F. 3d 757 (4th Cir. 2017). Plaintiffs are quite mistaken.

*Hall* was a joint employment case where the plaintiffs alleged that, although technically employed by satellite TV installation and repair companies, they were jointly employed by DIRECTV. *Id.* at 761 – 63. The Complaint detailed DIRECTV's byzantine structure which was "organized as a pyramid" and mischaracterized Plaintiffs as independent contractors when they were, in fact, captive employees of DIRECTV. *Id.* The Fourth Circuit spent fourteen pages extensively examining the District Court's analysis of joint employer precedent and concluded that Plaintiff had adequately alleged a joint employment relationship. *Id.* at 763 – 76.

The Fourth Circuit then considered Defendants' alternative request to affirm the dismissal based on Plaintiffs' failure to adequately allege FLSA minimum wage and overtime claims. *Id.* at 776. The Fourth Circuit examined the spectrum of standards within the federal circuits and opted for the more "lenient" end of the spectrum. *Id.* Then the Fourth Circuit expressly stated that the allegations Plaintiffs make in this case are inadequate under the *Iqbal-Twombly* standard:

> Thus, to make out a plausible overtime claim, a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium for those overtime hours. **Under this standard, plaintiffs seeking to overcome a motion to dismiss <u>must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay</u>.**

*Id.* at 777 (emphasis added).

Thus, the Fourth Circuit has held that merely alleging that Plaintiffs worked more than forty hours per week and were not paid overtime is inadequate.  That is exactly what the Plaintiffs do in this case.  *See* Compl. ¶ 43.

If this clear holding was not enough, the Fourth Circuit reaffirmed the point the following year.  *See Peterson v. M.J.J., Inc.*, 720 F. App'x 702 (4th Cir. 2018).  In *Peterson*, the Fourth Circuit affirmed "for the reasons stated by the district court" a motion to dismiss in an FLSA overtime/minimum wage case.  *Id.* at 703.

The District Court opinion, *Peterson v. M.J.J., Inc.*, 2017 U.S. Dist. LEXIS 148908 (D. Md. Sep. 13, 2017), examined Plaintiffs FLSA overtime allegations — which were nearly identical to the allegations in this case: "Throughout [the Plaintiffs] employment . . . Plaintiff . . . **regularly worked over forty hours a week yet was not paid at the proper overtime rate required by the FLSA**."  *Id.* at *11 – 12 (emphasis added).

The District Court applied the Fourth Circuit's analysis in *Hall* and forcefully concluded that Plaintiffs allegations were inadequate:

> Oddly, Plaintiffs argue that *Hall* "is totally inapposite" to the instant case. Although *Hall* dealt only with an overtime claim rather than the overtime claim and the minimum wage claim in the present case, it is certainly not inapposite.  **It did not announce a new standard for pleading an FLSA claim but merely applied the familiar *Iqbal-Twombly* standard to an FLSA overtime claim.  <u>Hall is completely apposite to Plaintiffs' case</u>.**  Moreover, *Hall* was decided prior to Plaintiffs' filing of their amended complaint, **but Plaintiffs did not take heed of its admonitions regarding sufficiency of this kind of claim despite Defendants' then-pending motion to dismiss the original complaint for failure to comply with the *Iqbal-Twombly* standard.**

*Id.* at *13 – 14 (emphasis added).

The District Court was equally severe with Plaintiffs' minimum wage allegation (which virtually mirrors Plaintiffs' allegations at Complaint ¶ 306).  *Id*. at *14 – 15.  The District Court

held that the minimum wage allegations were conclusory and formulaic:

> A review of the entire complaint reveals its dependence upon vague, conclusional allegations. **Nowhere in the complaint is there sufficient factual content that allows an inference that the wages actually received by Plaintiffs were less than minimum wage**. The complaint's failure to meet the well-established *Iqbal-Twombly* pleading standard requires granting Defendants' motion to dismiss as to Counts I and III.

*Id.* at \*15 (emphasis added).

As noted above, the Fourth Circuit affirmed the District Court's ruling "for the reasons stated by the district court." *Peterson*, 720 F. App'x at 703.

Another recent case in this Circuit is also on point. *Hagee v. Capital Tacos, Inc.*, 2018 U.S. Dist. LEXIS 13626 (W.D. Va. Jan. 29, 2018). In *Capital Tacos*, Plaintiffs made claims for unpaid overtime hours. The Complaint alleged that Plaintiffs "**regularly and routinely worked more than 40 hours per week, without overtime pay**." *Id.* at \*6 (emphasis added). This formulation is nearly identical to Plaintiffs' here. *See* Compl. ¶ 43.

The Western District dismissed Plaintiffs' overtime claim, relying on *Hall*:

> Applying this standard [from *Hall*] the court concludes that the plaintiffs' complaint does not state a plausible claim for unpaid overtime wages. Indeed, ***Hall* makes clear that the very assertion made by the plaintiffs—that they "regularly and routinely worked more than forty (40) hours in a week, without overtime pay," Compl. ¶ 13—is insufficient under *Twombly and Iqbal*.**

*Id.* at \*7-8 (emphasis added).

Another case in this Circuit drives home the point. *Aleman v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, 2019 U.S. Dist. LEXIS 212224 (D. Md. Dec. 9, 2019). In *Kaiser* Plaintiffs broadly alleged unpaid overtime claims under the FLSA. *Id.* at \*6. But the District Court was unpersuaded that Plaintiffs' broad allegations met the federal pleading standards articulated in *Hall*:

> "Plaintiffs recite boilerplate elements of an overtime claim with no factual context.

> Because *Hall* endorsed a lenient approach, **but not a standardless one, mere legal recitation devoid of any facts cannot survive challenge** . . .The Amended Complaint provides no facts by which this Court can infer how **and in what capacity Plaintiffs worked more than 40 hours in a given week.** Nor does the Amended Complaint meaningfully provide a time frame for Kaiser's alleged misconduct . . . **Without more, Kaiser is deprived of the minimal notice necessary to defend the claims.** *See Twombly*, 550 U.S. at 555 (explaining that the purpose of the complaint is to "give the defendant fair notice of what the . . . claim is and the grounds on which it rests") . . . this Court views the Amended **Complaint as more akin to the barebones allegations rejected by this Court previously.**"

*Id.* at *6 - 7 (citing *Peterson v. MJJ*, 2017 U.S. Dist. LEXIS 148908 *supra* (emphasis added)).

In *Spencer v. Macado's, Inc.*, 2018 U.S. Dist. LEXIS 129522 (W.D. Va. Aug. 1, 2018), the Western District examined FLSA allegations in light of *Hall* and dismissed the Complaint. Plaintiffs had alleged that they had not been paid for work "off-the-clock" but did not identify when or how frequently they worked "off the clock." Judge Moon, relying on *Hall*, held that these allegations were too tenuous to survive challenge:

> Plaintiffs' "off the clock" claim alleges that they were forced to perform tasks before work started and that they were not paid for that work. **These allegations contain no factual specificity about how frequently this occurred or the approximate amount of time Plaintiffs spent off the clock.** As discussed above, the Fourth Circuit has, in a related context, required plaintiffs to **"provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference" that a FLSA violation occurred**.

*Id.* at *25 – 26 (quoting *Hall*, 846 F.3d at 777).

Judge Moon then discussed other district court opinions that required FLSA Plaintiffs to identify the unpaid compensation and the number of hours worked without proper compensation to survive a motion to dismiss:

> "[C]ourts in this Circuit have held that **a plaintiff must sufficiently indicate the compensation he was entitled to and the number of hours worked without proper compensation to survive a motion to dismiss."** *Ray*, 2012 U.S. Dist. LEXIS 141199, 2012 WL 4591922, at *2 (D.S.C. Oct. 1, 2012) (dismissing FLSA overtime case); *Hagee v. Capital Tacos, Inc.*, No. 3:17CV00076, 2018 U.S. Dist. LEXIS 82951, 2018 WL 2248607, at *3 (W.D. Va. May 16, 2018) ("Unlike their

original pleading, the amended complaint includes allegations regarding the plaintiffs' regular work schedules, rates of pay, and uncompensated work time.").

*Id.* at *26.

The Court concluded that Plaintiffs' lack of specificity warranted dismissal "[b]ecause Plaintiffs' factual allegations do not address these requirements, Plaintiffs' allegations lack sufficient 'factual context [to] 'nudge' their claim 'from conceivable to plausible.'" *Id.* (citing *Hall*, 846 F.3d at 777).

This case also parallels a recent case from the Eastern District of North Carolina. *Acosta v. Ararat Imp. & Exp. Co., LLC*, 378 F. Supp. 3d 443 (E.D.N.C. 2019). In *Acosta*, Plaintiffs made minimum wage allegations similar to the allegations in this case. *Id.* at 445. They did not allege the length of time that they were underpaid, the amount of underpayment, or any other facts that lent plausibility to their allegations. *Id.* The District Court, relying on *Hall*, dismissed Plaintiffs' claims:

> Modifying the Fourth Circuit's above direction [in *Hall*] for a minimum wage claim context, **plaintiff states nothing about the length and frequency of their underpaid work to support a reasonable inference that the employees did not receive the applicable minimum hourly rate nor does plaintiff estimate the amount employees were underpaid or the amount of wages plaintiff believes employees are owed nor offer any other facts that will permit the court to find plausibility**. Also, what is alleged here is significantly less than what the Fourth Circuit found to be sufficient in ***Hall***.

*Id.* at 447.

Remarkably, even the cases cited by Plaintiffs in their Opposition contradict their argument that they can simply allege that all Plaintiffs worked "at least 70 to 80 hours per week" and were not paid overtime. *See* Compl. ¶ 43. Plaintiffs cite *Davis v. Abington Mem. Hosp.*, 765 F.3d 236 (3d Cir. 2014), as evidence of the "lenient" approach which allows non-specific allegations like Plaintiffs'. *See* Opp. at p. 18. But the Third Circuit in *Davis* **affirmed** the district court's dismissal

of Plaintiffs' FLSA claim.  Further, the *Davis* plaintiffs' FLSA claim was more detailed than

Plaintiffs' claim in this case:

> Each named plaintiff alleges that he or she "typically" worked shifts totaling
> between thirty-two and forty hours per week and further alleges that he or she
> "frequently" worked extra time.  For instance, Collette Davis "typically" worked
> the 3:00 p.m. to 11:30 p.m. shift five days per week, totaling forty hours, exclusive
> of the 2.5 hours deducted from her pay for meal periods (during which she
> "frequently" worked), the one to two hours she worked after her shift, and the
> twenty hours of annual continuing education units she was required to complete.

*Davis*, 765 F.3d. at 242.

Notwithstanding this level of detail, the Third Circuit held that the FLSA allegations were

inadequate because they did not allege the specific weeks that they were not paid overtime:

> Of the four named plaintiffs who allege that they "typically" worked at least forty
> hours per week, in addition to extra hours "frequently" worked during meal breaks
> or outside of their scheduled shifts – Davis, Erica Williams, Gerardina Ilaria, and
> Diane Read – none indicates that she worked extra hours <u>during</u> a typical (that is, a
> forty-hour) week.  Their allegations are therefore insufficient.

*Id.*

The Third Circuit in *Davis* followed the Second Circuit in *Lundy v. Catholic Health Sys.*

*of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013).  *See id.* at 242.  *Lundy* is also instructive because

the Second Circuit affirmed the district court's dismissal of Plaintiffs' FLSA overtime claims.  The

district court and the Second Circuit "thoroughly" reviewed Plaintiffs' FLSA allegations and

concluded that "no plausible claim that FLSA was violated, because Plaintiffs **have not alleged a**

**single workweek in which they worked at least 40 hours and also worked uncompensated**

**time in excess of 40 hours**."  *Lundy*, 711 F.3d at 114 (emphasis added).

Here, Plaintiffs have not alleged "a single workweek in which they worked at least 40 hours

and also worked uncompensated time in excess of 40 hours."  *See* Compl. ¶¶ 306, 307.  Plaintiffs

also fail to provide "some factual context that will 'nudge' their claim 'from conceivable to

14

plausible.'"  *Hall*, 846 F.3d at 777.  In light of the weight of authority in this Circuit and in light of the sketchy and implausible allegations in the Complaint, Monterrey Concrete respectfully requests that the Court dismiss Plaintiffs' FLSA allegations.

**B.    Simple Math Shows That Plaintiffs Cannot Allege a FLSA Minimum Wage Claim.**

This Court has long held that, to state a claim for FLSA minimum wage violation, the hours worked multiplied by the wages per hour paid must fall below the minimum wage of $ 7.25:

> "[A]n employer does not violate the FLSA unless **the total weekly compensation divided by the number of hours worked yields an hourly rate below "minimum wage."**  Therefore, to state a plausible claim for unpaid wages for regular time (as opposed to overtime) under the FLSA, **Plaintiff must allege enough facts for the  Court to infer that her weekly hourly wage rate fell below the federal minimum wage of $7.25 per hour.**

*Kuntze v. Josh Enters.*, 365 F. Supp. 3d 630, 649-50 (E.D. Va. 2019) (citations omitted).

In this case, Plaintiffs allege that they were paid a regular hourly wage of between $ 15.72 per hour (Plaintiff No. 1) to $ 17.66 per hour.  *See* Compl. ¶¶ 50 – 54.  Plaintiffs also allege that they were "made to work 70 to 80 hours per week."  *Id.* at ¶ 55.  Even assuming Plaintiffs' implausible claim that each Plaintiff worked "70 to 80 hours a week" and even using the high end of the unreasonable estimate, no Plaintiff was ever paid less than minimum wage for a given week:

| Plaintiff/Complaint | Hourly Wage in Complaint | Wage per 40 Hour Week per Complaint | Wage per 80 Hour Week |
|---|---|---|---|
| Pl. No. 1/ ¶ 50 | $ 15.72 | $ 629.20 | $ 7.87 |
| Pl. No. 2/ ¶51 | $ 16.49 | $ 900.00 (should be $ 659.60) | $ 11.25 (should be $ 8.25) |
| Pl. Nos. 1, 3, 4, 5, 6/ ¶ 52 | $ 16.49 | $ 659.60 | $ 8.25 |
| Pl. Nos. 3 (second H-2B visa), 4 (second H2B visa), 8, 9, 10, 11, 12, 13, 14/ ¶ 53 | $ 17.24 | $ 689.60 | $ 8.62 |
| Pl. Nos. 15, 16, 17/ ¶ 54 | $ 17.66 | $ 706.40 | $ 8.83 |

In short, simply based on the four corners of the Complaint, Plaintiffs cannot state a plausible FLSA minimum wage claim.  Monterrey Concrete respectfully requests that the Court dismiss this claim.

## III.   **Plaintiffs Still Fail to Allege TVPA Claims.**

Plaintiffs basically re-plead their Complaint in their Opposition to Monterrey Concrete's Motion to Dismiss their TVPA claims.  *See* Opp. at pp. 9 – 17.  But Plaintiffs disingenuously characterize the standard of review for TVPA claims in this District.

The standard of review requires Plaintiffs' TVPA claims to be strictly construed.  As this Court held less than three years ago, Plaintiffs' complaint "must not only pass the test of *Twombly* and *Iqbal*, **but also must be strictly construed**." *Fei Guan v. Bing Ran*, 2017 U.S. Dist. LEXIS 104809, at *9 (E.D. Va. July 6, 2017) (citing *Crandon v. United States*, 494 U.S. 152, 158, 110 S. Ct. 997, 108 L. Ed. 2d 132 (1990) (applying the rule of lenity where the governing standard in a civil case is embedded in a criminal statute) and *FCC v. Am. Broad. Corp.*, 347 U.S. 284, 296, 74 S. Ct. 593, 98 L. Ed. 699 (1954) (noting that criminal statutes must be strictly construed, even when they are applied in civil cases)) (emphasis added).

Plaintiffs attempt to distinguish this clear precedent with a footnote and a reference to a single sentence in a 39 page FCA opinion by the District of Maryland.  *See* Opp. at fn. 5.  Plaintiffs make no effort to harmonize this Court's accurate statement of United States Supreme Court precedent with the single sentence from the District of Maryland.

The law is clear.  Over sixty-six years ago, the United States Supreme Court held that criminal statutes are strictly construed when applied in civil cases like this one:

> There cannot be one construction for the Federal Communications Commission and another for the Department of Justice. **If we should give § 1304 the broad construction urged by the Commission, the same construction would likewise apply in criminal cases.  We do not believe this construction can be sustained**. Not only does it lack support in the decided cases, judicial and administrative, but also **it would do violence to the well-established principle that penal statutes are to be construed strictly.**

*FCC v. Am. Broad. Co.*, 347 U.S. 284, 296, 74 S. Ct. 593, 600-01 (1954).

The TVPA is a criminal statute.  Per the United States Supreme Court's precedent and this Court's opinion in *Fei Guan*, Plaintiffs must meet the heightened pleading standard for criminal statutes.  They do not.

Not only do Plaintiffs ignore the pleading standard, they never address the principal point Monterrey Concrete made in its Motion: that Plaintiffs must prove Monterrey Concrete's actions were intended to force them to work against their will at Monterrey Concrete.  *See* Mem. in Supp., Doc. No. 13, pp. 15 – 26.

The Complaint shows that Plaintiffs were not compelled to remain at Monterrey Concrete and work against their will.  Most of the Plaintiffs left Monterrey Concrete before the expiration of their H-2B period.[9]  Plaintiffs Nos. 1, 3 and 4 actually rejoined Monterrey Concrete for a second H2-B visa.  *See id.* at ¶¶ 100; 116 – 120; 127 – 130.  Plaintiffs' complaints about working conditions are never plausibly linked to an allegation that they had no "viable exit option." *Muchira v. Al-Rawaf,* 850 F.3d 605, 620 (4th Cir. 2017).  Indeed, the fact that most of them left before the expiration of their H-2B visas shows that they had a "viable exit option" — and took it.

As noted above, Plaintiffs feel compelled to overstate their allegations of bad behavior in their Opposition.  *See* bullet points at pp. 1 – 2 above.  However, even if accurately stated, the allegations in the Complaint amount to little more than a "bad employer-employee relationship" which does not "constitute forced labor."  *Id.*

As Monterrey Concrete detailed in its Memorandum in Support, the cases in this and other circuits state, time and again, that allegedly bad behavior, unpleasant work conditions and even rudeness do not establish a TVPA claim.  To plead a plausible TVPA claim, Plaintiffs must allege

---

[9] See p. 2 *supra*; Compl. ¶¶ 94 (Pl. No. 1 –eight months); 120 (Pl. No. 3 –six months); 142 (Pl. No. 5 –7 months); 153 (Pl. No. 6 – five months); 163 (Pl. No. 7 –five months); 192 (Pl. No. 10 – eight months); 203 (Pl. No. 11 – eight months); 218 (Pl. No. 12 – eight months); 242 (Pl. No. 14 – one month); 249 (Pl. No. 15 – six months); and 275 (Pl. No. 17 – six months).

that Defendants robbed them of the ability to exercise free will in working or not working for Defendants:

> As reflected in the statutory elements of Plaintiff's claims, the central issue does not concern the terms and conditions of Plaintiff's employment, as such, but rather the volitional nature of that employment. **No matter how unpleasant the work, or the conditions under which services are provided**, the critical inquiry for the purposes of the TVPA is whether a person provides **those services free from a defendant's physical or psychological coercion that as a practical matter eliminates the ability to exercise free will or choice**.

*Muchira v. Al-Rawaf*, 2015 U.S. Dist. LEXIS 49806, at *31 (E.D. Va. Apr. 15, 2015).

Plaintiffs fail to connect their fraught factual allegations with a plausible claim that Monterrey Concrete sought to coerce their unwilling labor. Plaintiffs' repeated allegations that these grown men in their 30's and 40's "felt coerced to keep working for Defendants due to the climate of fear" are conclusory, formulaic and do not ring true. *See, e.g.*, Compl ¶¶ 102, 114, 125.

For example, Plaintiffs claim that they were frightened by a fight between Mr. De La Rosa and Plaintiff No. 9. *See, e.g.*, Compl. ¶¶ 201; 213; 226; 236; 247; 257; 268; 282. But Plaintiffs never allege that the fight had anything to do with coercing that Plaintiff's unwilling labor. *See id.* at ¶¶ 183 – 184. The fight scene, while melodramatic, is never plausibly linked to coerced, unwilling labor. The Ninth Circuit accurately described similar allegations in *Headley v. Church of Scientology Int'l*, 687 F. 3d 1173, (9th Cir. 2012):

> [A]lthough the Headleys marshaled evidence of potentially tortious conduct, they did not bring claims for assault, battery, false imprisonment, intentional infliction of emotional distress, or any of a number of other theories that might have better fit the evidence. **The Headleys thus wagered all on a statute enacted "to combat" the "transnational crime" of "trafficking in persons"—particularly defenseless, vulnerable immigrant women and children. Whatever bad acts the defendants (or others) may have committed, the record does not allow the conclusion that the Church or the Center violated the Trafficking Victims Protection Act**.

*Id.* at 1181.

The District of Idaho (in a case not addressed by Plaintiffs' Opposition) similarly held that difficult working conditions do not support a TVPA claims unless linked to coerced labor:

> It does appear that working at Funk Dairy was not as enjoyable as Plaintiffs originally thought.  It also appears that some aspects of the job were over-emphasized.  But these facts alone do not give rise to legal action.  In like manner, while it appears that Funk Dairy—mostly via Giles and other supervisory employees—was tough on Plaintiffs, somewhat overbearing, controlling, and even downright insensitive at times, being tough, rude, or even abusive does not rise to the level of forced labor under the TVPRA unless those things *induced Plaintiffs to stay*.  **Plaintiffs have failed to present material evidence that Funk Dairy knowingly obtained Plaintiffs' labor by force, serious harm, or threat and that they kept Plaintiffs employed via similar means.**

*Martinez-Rodriguez v. Giles*, 391 F. Supp. 3d 985, 998 (D. Idaho 2019) (emphasis added).

Even Plaintiffs allegation that Monterrey Concrete "confiscated" Plaintiffs passports does not give rise to a TVPA claim unless it is linked to coerced labor:

> [Plaintiff's] testimony is sufficient to support a finding that the Saudi family kept her passport, just as they had done in Saudi Arabia, in accordance with the cultural practices of their country.  **But it is insufficient to support a finding that the Saudi family "seized" or "withheld" Muchira's passport as a means of forcing her to remain in a condition of involuntary servitude**.

*Muchira*, 850 F.3d at 623 (emphasis added).

In sum, Plaintiffs' allegations of bad working conditions, veiled threats and angry fights are never plausibly connected to a plan, by Monterrey Concrete, to keep these grown men in "a condition of involuntary servitude."  The fact that most of the men left before their visa term is ample evidence that they were not coerced into involuntary servitude.

## IV.     Some of Plaintiffs' Claims Are Time-Barred and Not Equitably Tolled.

Plaintiffs claim that the Fourth Circuit has adopted blanket equitable tolling for FLSA claims when an employer fails to post an FLSA poster.  *See* Opp. at p. 19.  Plaintiffs rely on *Cruz v. Maypa*, 773 F.3d 138 (4th Cir. 2014).  As noted previously, Plaintiffs are wrong.

*Cruz* relies on a horrific fact pattern that is worlds away from the fact pattern described by

the concrete workers here.  *See id.* at 141–43.  Notwithstanding the Fourth Circuit's extensive discussion of the horrors of Cruz's employment, Plaintiffs, here, claim that the Fourth Circuit did not rely on equitable tolling toll the FLSA filing deadline but rather based it on an administrative construct, analogizing the FLSA statute of limitations to the administrative deadline for filing ADEA claims.  *See* Opp. at p. 19.  Plaintiffs misread *Cruz*.  The extensive discussion of equitable tolling permeates the Fourth Circuit's opinion in *Cruz* and, (not surprisingly) other courts consider *Cruz* to be an equitable tolling decision.  *See, e.g.*, *Martinez v. Mendoza*, U.S. Dist. LEXIS 131358, at *6 (E.D.N.C. Aug. 6, 2019) ("[E]quitable tolling is available for claims under the FLSA under appropriate circumstances, where 'the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant [or where] extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'"); *Perez v. Shucks Me. Lobster LLC*, 2016 U.S. Dist. LEXIS 148760, at *36 (D. Me. Oct. 27, 2016) (describing *Cruz* as "equitably tolling the FLSA statute of limitations on behalf of an immigrant employee where the employer failed to post statutory notice of her FLSA rights").

In short, to the extent Plaintiffs allege FLSA and contract/quasi contract claims that accrue before November 7, 2016, those claims are time-barred and Plaintiffs have not shown the "extraordinary circumstances" warranted for equitable tolling.

## CONCLUSION

Monterrey Concrete respectfully requests that the Court grant its Motion and dismiss Plaintiffs' Complaint, and grant such other relief as it deems appropriate.

Dated: March 16, 2020                    Respectfully submitted,


                                        */s/ Robert F. Redmond, Jr.*
                                        Robert F. Redmond, Jr. (VSB No. 32292)
                                        McGuireWoods LLP
                                        Gateway Plaza
                                        800 East Canal Street
                                        Richmond, Virginia  23219
                                        rredmond@mcguirewoods.com
                                        T: (804) 775-1123
                                        F: (804) 698-2145

                                        *Counsel for Defendants Monterrey Concrete, LLC,*
                                        *and Jose De La Rosa*


## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send automatic notification of such filing to all counsel of record who are registered with the CM/ECF System.


                                        */s/ Robert F. Redmond, Jr.*