IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ARTURO ESPARZA MACIAS,
et al.,

      Plaintiffs,

v.                                Civil Action No. 3:19cv830

MONTERREY CONCRETE LLC,
et al.,

      Defendants.

## MEMORANDUM OPINION

This matter is before the Court on MONTERREY CONCRETE, LLC AND JOSE DE LA ROSA'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT (ECF No. 12) ("Motion to Dismiss"). For the reasons set forth below, the Motion to Dismiss is granted in part and denied in part, and Plaintiffs will be granted leave to file an Amended Complaint.

Arturo Esparza Macias, Victor de los Reyes Rabanales, Cesar Ivan Esparza Aguilar, Jaime Marquez Esparza, Manuel Marquez Esparza, Jacobo Esparza Aguilar, Jose Luis Diaz Gomez, Ricardo Guadalupe Gomez Torres, Rodrigo Canales Salazar, Bladimir Guadalupe Macias Esparza, Catarino Odon Hernandez, Francisco Odon Hernandez, Reuel Eugenio Villagrana Canales, Alonso Cisneros Ayala, Leopoldo Gonzales, Luis Carlos Romero, and Uriel Cisneros (collectively the "Plaintiffs") filed this action against Defendants Monterrey Concrete, LLC ("Monterrey") and Defendant Jose De La Rosa ("De La Rosa" and with Monterrey the "Defendants"),

seeking alleging damages incurred as a result of the Defendants' alleged violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589 et seq., the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Virginia common law of contracts. The Complaint (ECF No. 1) asserts claims for forced labor, trafficking, failure to pay federal minimum wage and overtime, breach of contract, and quantum meruit. The facts reasonably and plausibly pled in the Complaint are recited below. In reciting the facts, the plaintiffs are given the benefits of all inferences that may be draw from the well-pleaded facts.

## BACKGROUND

Plaintiffs are Mexican nationals who came to the United States on H-2A and H-2B visas to work for Defendant Monterrey Concrete. Under the Department of Labor ("DOL")'s H-2B visa program, companies are allowed to hire foreign "unskilled workers" to perform nonagricultural work in the United States for temporary periods of time. 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

Monterrey is a concrete contracting business located in Henrico, Virginia, owned and overseen by Jose De La Rosa ("De La Rosa"). Between 2014 and 2018, Defendants successfully filed applications with the DOL to employ workers for periods of nine months. Compl. ¶¶ 28-32, ECF No. 1. To that end, De La Rosa allegedly travelled to Monterrey, Mexico, met with Plaintiffs, and

agreed to provide them with 40-hour per week jobs in Virginia as concrete masons and cement finishers and to provide them with room and board, suitable meals, tools, and transportation from Mexico to-and-from Virginia.

Each plaintiff, though at different points in time, accepted Defendants' offer of employment under the terms verbally articulated to them and reported to the United States consulate in Monterrey, Mexico, where their visas were processed. Compl. ¶¶ 38-41, ECF No. 1. Plaintiffs allege that, "immediately after Plaintiffs arrived in the United States . . Defendants subjected Plaintiffs to vicious threats and intimidation, squalid conditions in their work environment and living conditions alike, and pay practice that constitute textbook violations of the Fair Labor Standards Act ("FLSA")." Pls.' Opp. to Defs.' Mot. to Dismiss at 1, ECF No. 18.

Specifically, Plaintiffs assert that De La Rosa announced upon Plaintiffs' arrival that they would be required to work as much as De La Rosa required them to but would only be paid for forty hours of work per week. Compl. ¶¶ 42-44, ECF No. 1. Plaintiffs allege that De La Rosa "confiscated" passports from fourteen of the seventeen plaintiffs and took Social Security cards from six plaintiffs. Id. According to Plaintiffs, when they asked for their documents to be returned, De La Rosa refused. Id. Further, Plaintiffs allege that, contrary to the terms of their

3

oral contract to provide "adequate" housing, they were required to live in overcrowded and substandard housing.

Plaintiffs also allege that, during the pendency of their employment at Monterrey, they were required to work at least seventy to eighty hours each week, and sometimes more. In some instances, Plaintiffs claim that they were required to work overnight or up to twenty-four hours at a time. Compl. ¶¶ 43, 49, 55, ECF No. 1. It is alleged, as well, that Plaintiffs were rarely paid overtime but were instead paid a flat rate that amounted to a paycheck for forty hours a week at the hourly rate they were promised in their oral employment contracts. Id. In addition, Plaintiffs assert that Defendants typically did not give them lunch breaks or water while working. Id. ¶ 73-74.

The Complaint contains a litany of other abuses the Plaintiffs claim to have suffered at the hands of De La Rosa, who allegedly compelled the Plaintiffs to continue to work at Monterrey through threats and coercion. For example, Plaintiffs allege that De La Rosa threatened to suspend their visas, threatened to have Plaintiffs sent to jail, and threatened to report Plaintiffs to immigration authorities if they did not obey his orders. Further, Plaintiffs assert that De La Rosa threatened Plaintiffs by stating that Plaintiffs' families would be in danger if the Plaintiffs did not follow De La Rosa's demands. And, De La Rosa allegedly would tell the Plaintiffs had to "buy" their freedom if they wanted to

leave.   Compl. ¶¶ 61, 111, 156.   More than once, Plaintiffs contend, in order to show off his dominance over his employees, "De La Rosa brought his associates into his garage, where Plaintiffs were sleeping, in the middle of the night. [] De La Rosa would wake-up Plaintiffs and order them to stand in a line, and then brag to his associates about how he had brought Plaintiffs under his command."   Pls.' Opp. to Defs.' Mot. to Dismiss at 6, ECF No. 18.   At other points, Defendants demanded several Plaintiffs overstay their visas and punished those who refused by firing them prematurely.   Compl. ¶¶ 66, 98, 242, ECF No. 1.

Count I alleges a violation of the Forced Labor prohibition in violation of the TVPA against both Defendants.  The gravamen of Count I is the allegation that Defendants knowingly provided or obtained Plaintiffs' labor in violation of the TVPA by, inter alia, "retaining Plaintiffs' passports and other documents; making threats of returning Plaintiffs to Mexico; firing and taking to the border individuals, including certain of the Plaintiffs, who questioned their working conditions; telling Plaintiffs that Defendant De La Rosa had connections to dangerous people in Mexico; and physically assaulting and/or restraining certain of Plaintiffs."  Compl. ¶ 288, ECF No. 1.

Count II alleges a claim for Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor in violation of the TVPA.  In support of Count II, Plaintiffs maintain

5

that Defendants "knowingly harbored, transported, provided for, and obtained Plaintiffs for labor in violation of numerous provisions" of the Act.  Compl. ¶ 297, ECF No. 1.

Count III alleges a claim for failure to pay federal minimum wage and overtime, in violation of the FLSA.  Specifically, Plaintiffs maintain that they were not paid at least $7.25 for every hour of work in each workweek nor were they paid a time-and-a-half overtime premium for their weekly hours worked over forty.

Count IV alleges a breach of contract claim under Virginia common law against Monterrey.  In Count IV, Plaintiffs state that an employment contract existed between each of the Plaintiffs and Monterrey by virtue of offers of employment made by Monterrey to Plaintiffs and the Plaintiffs' acceptance of the offers and beginning work for Monterrey.  The Plaintiffs maintain that Monterrey first "breached the employment contracts with Plaintiffs by compensating Plaintiffs below the applicable rates set forth in their contracts, the prevailing wages, or the required overtime premiums for their work, both of which were additionally promised to Plaintiffs by Defendant De La Rosa acting as an agent for Defendant Monterrey Concrete."  Compl. ¶ 317, ECF No. 1.  They also claim that Monterrey breached the oral contracts by failing to provide Plaintiffs with adequate housing and failing to abide by applicable H-2B regulations.

Count V alleges, in the alternative to the breach of contract, a quantum meruit claim under Virginia common law. Specifically, the Plaintiffs allege that, "It is inequitable for Defendant Monterrey Concrete to retain the benefits of Plaintiffs' services without fully compensating them for the value of their services." Compl. ¶ 329, ECF No. 1.

Also, in the alternative to breach of contract, Count VI alleges an unjust enrichment claim under Virginia common law. There the Plaintiffs maintain that it is inequitable for Monterrey to retain the benefits that Plaintiffs conferred without paying for the value of the work that the Plaintiffs provided.

## DISCUSSION

### I.   Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a complaint should be dismissed for failure to state a claim if "[it] appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief." Chapman v. Clarendon Nat'l Ins., 299 F. Supp. 2d 559, 562 (E.D. Va. 2004). In considering Fed. R. Civ. P. 12(b)(6) motions to dismiss, courts "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018). To survive a motion to dismiss under Fed. R. Civ. P.

7

12(b)(6), a plaintiff must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "A claim is plausible on its face if a plaintiff can demonstrate more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted). However, courts do not "accept as true a legal conclusion couched as a factual allegation." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015) (quoting United States v. Triple Canopy, Inc., 775 F.3d 628, 632 n.1 (4th Cir. 2015)) (internal quotation marks omitted). A complaint attacked by a motion to dismiss under Rule 12(b)(6) does not require detailed factual allegations, but it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## II. Analysis

Defendants bring their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs' Complaint does not state a claim upon which relief can be granted. Specifically, Defendants make the following arguments:

8

(1) Plaintiffs' Fair Labor Standards Act ("FLSA") claim (Count III) is so vague as to not give the Defendants fair notice and it is asserted that Count III it not plausible on its face;

(2) Plaintiffs' contract and quasi-contract claims (Counts IV, V, and VI) are governed by Mexican law under the choice of law rules of Virginia but Plaintiffs fail to plead facts under the law of Mexico supporting Counts IV-VI;

(3) Plaintiffs' TVPA claims (Counts I and II) fail to state plausible claims of "forced labor" as required under Fourth Circuit law; and

(4) many of the Plaintiffs' claims are time barred on their face because they were not brought within the applicable statute of limitations.

Each argument will be addressed in turn.

## A. Plaintiffs' FLSA Claims (Count III)

In Count III of the Complaint, Plaintiffs request declaratory relief and damages for violations of the minimum wage and overtime provisions of the FLSA. Defendants move to dismiss each of the Plaintiffs' FLSA claims under Fed. R. Civ. P 12(b)(6), arguing that the claims are not plausible on the face of the Complaint.

### a. Plaintiffs' Overtime Claims

First, Defendant moves to dismiss Plaintiffs' claim that Defendants violated the FLSA's overtime provision by failing to pay Plaintiffs a time-and-a-half overtime premium for any hours worked in a week over forty.  Compl. ¶ 307, ECF No. 1.  Defendants argue that the Plaintiffs provide no factual support for their claims that they worked at least 70 to 80 hours a week nor do they allege a specific day, week, or month they were not paid for. Defendants maintain that Plaintiffs' statements are "labels and conclusions," which do not amount to enough to pass muster under 12(b)(6).

In response, Plaintiffs argue that, under Fourth Circuit precedent, namely Hall v. DirectTV, 846 F.3d 757 (4th Cir. 2017), they are not required to identify specific weeks or pay periods in which they worked uncompensated overtime hours.  Rather, say the Plaintiffs, the Complaint meets Hall's lenient standard by alleging that the Plaintiffs were compensated at the regular rate set out in the H-2B applications; that they regularly worked 70 to 80 hours per week; and they only rarely received overtime compensation for hours worked in excess of 40 hours per week. Pls.' Opp. to Defs.' Mot. to Dismiss at 24, ECF No. 18.

To successfully plead a claim under the FLSA, a plaintiff must allege:  "(1) that she was an employee of the Defendant, (2) that she worked overtime hours and the 'amount and extent' of such

work, (3) that Defendant failed to pay her the requisite overtime premium under the FLSA for those hours, and (4) that Defendant knew of Plaintiff's uncompensated time." Kuntze v. Josh Enterprises, Inc., 365 F. Supp. 3d 630, 645 (E.D Va. 2019).

In Hall v. DirectTV, LLC, 846 F.3d 757 (4th Cir. 2017), the Fourth Circuit articulated the "level of detail an FLSA overtime claimant must provide to overcome a Rule 12(b)(6) motion to dismiss." There, the Court explained that:

> [T]o make out a plausible overtime claim, a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium for those overtime hours. Under this standard, plaintiffs seeking to overcome a motion to dismiss must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay. . . . At the same time, however, we emphasize that the standard we today adopt does not require plaintiffs to identify a particular week in which they worked uncompensated overtime hours. Rather, this standard is intended to require plaintiffs to provide some factual context that will nudge their claim from conceivable to plausible.

Id. (internal quotations and citations omitted) (emphasis added). According to the Fourth Circuit, "A plaintiff may meet this initial standard by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other

facts that will permit the court to find plausibility." Id.  The
Court of Appeals then observed that:

> In this case, in addition to their common
> allegations regarding the nature and structure
> of the DIRECTV Provider Network, Plaintiffs
> each describe in some detail their regular
> work schedules, rates of pay, and
> uncompensated work time. Specifically, each
> Plaintiff provides an approximation of his
> general workweek, with each Plaintiff alleging
> that he typically worked in excess (and, in
> some cases, well in excess) of forty hours per
> week.  Supplementing these initial
> allegations, each Plaintiff further estimates
> the number of hours he worked in any given
> week, including a breakdown of the number of
> compensable and noncompensable hours he
> typically worked, as well as his average
> weekly pay and the amount by which this weekly
> compensation was typically reduced through
> DIRECTV-imposed penalties and unreimbursed
> business expenses.
> <u>This final level of granularity, coupled
> with Plaintiffs' common allegations regarding
> the types of work DIRECTV designated as
> compensable and noncompensable, ultimately
> nudges Plaintiffs' claims against Defendants
> from the merely conceivable to the plausible.</u>
> At this initial stage, that is all that is
> required to overcome Defendants' motion to
> dismiss.

Id. at 779 (emphasis added).  In support of Plaintiffs' overtime
and unpaid wages claims, the Complaint contains the following
general allegations:

- "Namely, instead of the 8:00 AM to 4:00 PM workdays that
  Defendants had agreed to provide at the time of
  recruitment, Plaintiffs were told that they would be
  working as much as Mr. De La Rosa told them to work. And
  throughout their employment, Defendants regularly
  required Plaintiffs to work at least 70 to 80 hours a
  week, and sometimes even more than that. Defendants also

occasionally required Plaintiffs to work overnight, sometimes up to nearly 24 hours straight." Compl. ¶ 43.

- "Instead of paying them the hourly and overtime rates that Defendants had promised them in Mexico, Plaintiffs were told that they would only be paid at a rate equivalent to 40 regular hours per week, even if they worked more hours than that. And except for rare instances, that is how Defendants in fact paid them." Compl. ¶ 44.

- "During their time at Monterrey Concrete, all Plaintiffs worked approximately 70 to 80 hours per week, every week, and sometimes more. But despite working at least 70 to 80 hours a week, Plaintiffs were almost always paid at a flat salary rate equivalent to 40 hours of work at the regular rate set out in that year's H-2B Application. Except in rare instances, Plaintiffs were not paid overtime for any hours worked over 40 in a workweek." Compl. ¶ 49.

- In addition to consistently being made to work 70 to 80 hours a week, Defendants also occasionally required Plaintiffs to work overnight, sometimes up to nearly 24 hours straight." Compl. ¶ 55.

- "Defendants gave Plaintiffs incorrect pay statements falsely indicating that Defendants had paid Plaintiffs at rates and in amounts far above what Defendants had actually paid them." Compl. ¶ 56.

In addition to these general allegations, in Paragraphs 50-54, the Complaint details, for the years 2015-2018, how much each of the seventeen plaintiffs was paid, how frequently each was paid, how many hours each was compensated for, and what each plaintiffs' hourly pay rate was. Compl. ¶¶ 50-54, ECF No. 1. Further, beginning in paragraph 90, the Complaint outlines the facts about each individual's work at Monterrey, including the duration of each plaintiff's work. Just as one example, for Leopoldo Gonzales,

the Complaint states that, "Mr. Gonzales worked for Defendants in Henrico, Virginia under an H-2B visa for approximately 10 months in 2014 and 8 months in 2016." Compl. ¶ 94, ECF No. 1.

In addition to that information and the common allegations about the nature of their work, Plaintiffs provide some other details about their work at Monterrey, including their rates of pay per hour, the approximate number of hours they were required to perform work uncompensated, the time period that each of the Plaintiffs worked at Monterrey, and the frequency of their pay. On the other hand, Plaintiffs do not provide exact details about the amount of time they worked every day a week. But, as shown in the allegations in the Complaint, that appears to be because the time worked each week was not consistent and was allegedly determined by what De La Rosa deemed fit. And, unlike the plaintiffs in Hall, the Plaintiffs did not have access to the same type of information that was available to the employees at DirectTV. Instead, the Plaintiffs here must rely solely on their memories to support the allegations within the Complaint.

Considering the principles set by Hall and the allegations of the Complaint, the Court finds that Plaintiffs have alleged sufficient facts to support an inference that each plaintiff worked overtime for which he was not paid. As Hall observed, "Although Plaintiffs may ultimately be unable to substantiate their allegations through discovery, they sufficiently alleged a

14

plausible claim to unpaid overtime for their work on behalf of Defendants." Hall, 846 F.3d at 778. Thus, the FLSA overtime claim in Count III is sufficiently plead and the Motion to Dismiss it will be denied.

### b. Plaintiffs Minimum Wage Claims

Next, Defendants argue that, even if the Plaintiffs properly have alleged that they worked "70 to 80 hours a week," the Complaint does not contain any information that would allow for the inference that the plaintiffs were paid below the statutory minimum wage.

The FLSA does not protect against all improper payment practices that might be actionable in a civil lawsuit. 29 U.S.C. § 206(a)(1)(C) ("Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce . . .$7.25 an hour, . . ."). "Accordingly, an employer does not violate the FLSA unless the total weekly compensation divided by the number of hours worked yields an hourly rate below 'minimum wage.'" Kuntze v. Josh Enters., Inc., 365 F. Supp. 3d 630, 649 (E.D. Va. 2019) (citing Blankenship v. Thurston Motor Lines, Inc., 415 F.2d 1193, 1198 n.6 (4th Cir. 1969)). "Therefore, to state a plausible claim for unpaid wages for regular time (as opposed to overtime) under the FLSA, Plaintiffs must allege enough facts for the Court to infer that her weekly hourly wage rate fell below the federal minimum wage of $7.25 per hour."

Id. at 649-50 (citing Gregory v. FedEx Ground PAclage Sys., 2012 WL 2396873, at *7 (E.D. Va. May 9, 2012)).

In the Complaint, Plaintiffs allege that "Defendants violated the FLSA's minimum-wage provision, 29 U.S.C. § 206(a), by failing to pay Plaintiffs at least $7.25 for every hour of work in each workweek, to Plaintiffs' harm, and are liable to Plaintiffs in damages." Compl. ¶ 306, ECF No. 1. As a consequence, Plaintiffs seek to "recover their unpaid minimum and overtime wages, plus an additional equal amount in liquidated damages, . . .")." Id. However, the Plaintiffs do not allege any facts in the Complaint that would lead a reasonable person to the conclusion that they were paid below $7.25 an hour. As the Defendants point out, even if the Court assumes that each plaintiff worked 80 hours a week (the maximum amount of time any plaintiffs alleged to work), based on the amount of each plaintiff's hourly wage alleged in the Complaint, the hourly wage per 80-hour week is still above the minimum of $7.25/hour. Reply in Supp. of their Mot. to Dismiss Pls.' Compl. at 15, ECF No. 19.

At oral argument on the Defendants' Motion to Dismiss, Plaintiffs agreed that, standing alone, the total weekly compensations alleged within the Complaint do not result in an hourly breakdown of less than minimum wage. However, counsel argued that the Plaintiffs were required to pay for "tools, supplies, meals, rent, and utilizes that they should not have, and

those amounts should be deducted from . . .the final wage . . ."
June 15 Hearing Tr. at 64.  That argument was presented for the
first time at the hearing.  On the current record, the Plaintiffs'
FLSA minimum wage violation claim is insufficient to satisfy the
plausibility pleading standard.  See Twombly, 550 U.S. at 554.
The Court will grant Defendants' Motion to Dismiss the minimum
wage component of Count III, but will allow Plaintiffs' leave to
file an Amended Complaint.

## B. Plaintiffs' contract and quasi-contract claims (Counts IV, V, and VI)

Plaintiffs allege that Defendants breached their employment
contracts with Plaintiffs by: (1) "compensating Plaintiffs below
the applicable rates set forth in their contracts, the prevailing
wages, or the required overtime premiums for their work,"  Compl.
¶ 318, ECF No. 1; (2) agreeing to provide Plaintiffs with adequate
housing and failing to do so, Id. ¶ 319; and (3) failing to abide
by the applicable H-2B regulations, Id. ¶ 320.

Defendants move to dismiss Count IV under Rule 12(b)(6),
asserting that, "Because the nature, validity and interpretation
of their alleged employment contracts are governed by Mexican law,"
and because Plaintiffs did not plead the elements of a contract
under Mexican law, "Plaintiffs have failed to state a claim upon
which relief can be granted."  Memo. in Supp. of Mot. to Dismiss
Pls.' Compl., ECF No. 13 at 14.  In support of this argument,

17

Defendants maintain that the employment contracts at issue were entered into in Mexico and so should be governed by Mexican contract law.  The same principles are argued to defeat Counts V and VI.  In response, Plaintiffs argue that, although Plaintiffs entered into their contracts while outside of Virginia, it was clear that the parties intended for the employment contract to be fully performed in Virginia, so that, under Virginia's choice of law rules, Virginia law governs the breach of contracts issues.

It is well-established that courts must apply the substantive law of the state in which it sits, including its choice of law provisions.  Accordingly, Virginia's choice of law rules apply here.  See, e.g., Wood v. Southside Phyisician Network, LLC, 2019 WL 3416665, at *4 (E. D. Va. July 29, 2019).  Under Virginia choice of law, as both parties correctly point, claims involving the "nature, validity and interpretation of contracts are governed by the law of the place where made."  Wood v. Southside Physician Network, 2019 WL 3416665, at *4 (E.D. VA. July 29, 2019) (internal citations omitted).  However, "Virginia adheres to the principle that the law of the place of performance governs claims concerning the performance of a contract."  Trbovich v. Garcia, 2016 WL 10514833, at * 2 (E.D. Va. Aug. 24, 2016).

At this time, the Court declines to determine what substantive law should govern the specific issues that may arise in connection with the Plaintiffs' breach of contract claim and quasi-contract

claims.   In their Motion to Dismiss and brief in support thereof, Defendants do not argue that there was not a valid contract between the parties, nor do Defendants assert any issue regarding the nature or interpretation of the contracts themselves.   Instead, they argue that the Complaint does not set out the elements of Counts IV, V and VI under Mexican law and thus those counts are deficient.   However, Defendants do not explain what is required under Mexican law.   Moreover, it appears that the claims presented in Counts IV, V and VI are issues of performance and breach that would be governed by Virginia law.

The issue requires factual development about the actual making of the contract.   And, if Mexican law applies, it must be briefed.   Thus, the choice of law issue is not ripe for decision.

Finally, the Complaint gives the Defendants "fair notice of what the . . . claim is [under Counts IV, V and VI] and the grounds upon which it rests," Twombly, 550 U.S. at 555, which is all that is required at this stage of the litigation.   Any choice of law issues arising under Counts IV, V, and VI of the Complaint will be reserved for later.   Thus, the Motion to Dismiss Counts IV, V and VI will be denied.

### C. Plaintiffs' TVPA Claims (Counts I and II)

Count I of the Plaintiffs' Complaint alleges that the Defendants forced Plaintiffs' labor in violation of 18 U.S.C. § 1589(a)(1) of the TVPA.   Count II alleges that the Defendants

"knowingly harbored, transported, provided for, and obtained Plaintiffs for labor in violation" of the TVPA.

In making their argument, Defendants rely on the Fourth Circuit's decision in Muchira v. Al-Rawaf, 850 F.3d 605 (4th Cir. 2017), for the proposition that the forced labor provisions of the TVPA are not intended to redress every bad employment relationship involving immigrants, but are instead intended to effectuate constitutional prohibitions against slavery and involuntary servitude.  850 F.3d at 620.  Defendants maintain that it is not plausible on the face of the Complaint that Plaintiffs were forced to provide labor against their will and, at most, what the Plaintiffs alleged is a bad relationship between an employee and his employer.

In response, Plaintiffs point to specific instances in which they believe that the Defendants' actions went well beyond a "bad employee-employer relationship."  Pls.' Opp. to Defs.' Mot. to Dismiss at 10-11, ECF No. 18.  In particular, Plaintiffs allege that Defendants violated the TVPA (1) when De La Rosa retained Plaintiffs' passports and/or social security cards and failed to return them. which "instilled fear and coerced Plaintiffs into continuing to work for Defendants," id. at 10-11; (2) when De La Rosa physically "assaulted Mr. Cesar Ivan Esparza Aguilar by punching and slapping him. . . .[causing] Plaintiffs to feel coerced to continue working for Defendants;" Id; (3) when De La

20

Rosa threatened the Plaintiffs' or the Plaintiffs' families if they tried to leave and stated that Plaintiffs would have to "buy [their freedom] by paying De La Rosa over $10,000; and (4) when De La Rosa threatened that he could have the Plaintiffs' visas suspended and the Plaintiffs sent to jail if they left his employment.

The TVPA makes it unlawful to "recruit[], harbor[], transport[], provide[], or obtain[] by any means, any person for labor or services in violation of this chapter." 18 U.S.C. § 1590. Specifically, the Act prohibits "knowingly provid[ing] or obtain[ing] the labor or services of a person" by one of the following means:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a)(1)-(4). Under the statute, the term "[a]buse or threatened abuse of law or legal process" means "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person

to cause that person to take some action or refrain from taking some action." Id. § 1589(c)(1). In addition, "serious harm" is evaluated from the perspective of a "reasonable person of the same background and in the same circumstances" as the plaintiff, id. § 1589(c)(2), and the harm or threat of harm must be "sufficiently serious to compel that person to remain" in his or her conditions of servitude when he or she would have otherwise left. Muchira, 805 F.3d at 617. Further,

> When considering whether an employer's conduct was sufficiently serious to coerce the victim to provide labor or services against her will, we must also "consider the particular vulnerabilities of a person in the victim's position.
> . . . .
> Typically, therefore, "forced labor" situations involve circumstances such as squalid or otherwise intolerable living conditions, extreme isolation (from family and the outside world), threats of inflicting harm upon the victim or others (including threats of legal process such as arrest or deportation), and exploitation of the victim's lack of education and familiarity with the English language, all of which are "used to prevent [vulnerable] victims from leaving and to keep them bound to their captors."

Id. (internal citations and quotations omitted).

Defendants' assertion to the contrary notwithstanding, if the allegations in the Complaint are found to be true, they are very serious and could give rise to a claim under the TVPA. However, as the Complaint is currently drafted, Plaintiffs' have not adequately plead the broad TVPA claims that, according to their

briefs and oral argument, encompass all seventeen Plaintiffs. For example, it is far from clear from the face of the Complaint which of the Plaintiffs knew, or did not know, about the events that are alleged to be the basis of the TVPA claim. It is not plausible, nor is it reasonable under the circumstances, for the Complaint broadly to posit that all of the seventeen Plaintiffs knew[1] about the threats and incidents of alleged coercion against the other Plaintiffs because the Complaint's temporal allegations assert that different Plaintiffs were present at different times, some of which were before the predicate events occurred. Nor, under the current Complaint, is it plausible to accept the general, broad assertion that, because one Plaintiff was informed or aware of an event, all others likewise knew of it. It is not clear from the face of the Complaint when each of the allegations occurred nor is it clear the exact dates each of the plaintiffs worked at Monterrey, making it impossible to determine whether the incidents even occurred at a point when each of the plaintiffs were employed by Defendants or could have known of the pertinent facts. And, it is illogical to maintain that a person could feel coerced into

---

[1] See Compl. ¶ , ECF No. 1 ("Further, Mr. De La Rosa told Jacobo Esparza Aguilar that he had connections with dangerous people in Mexico and suggested that plaintiffs and their families would be in danger if they complained. As an example, Mr. De La Rosa told Jacobo Esparza Aguilar that a former employee's family in Mexico had indeed been threatened after the worker reached out to an attorney. Jacobo Esparza Aguilar shared this information with his coworkers.").

providing labor because of an event that he never witnessed or of which he was not aware.

In sum, the allegations in the Complaint are not sufficient to overcome the plausibility threshold required in Iqbal and Twombly. Where, as here, seventeen plaintiffs are included in a single claim under the TVPA, the Complaint must allege facts that make it plausible that each Plaintiff was subjected to a level of coercion that is redressable under the TVPA. As it stands, the generalities asserted in the Complaint, viewed in perspective of the lack of temporal connection between the alleged threats and each of the Plaintiffs, are insufficient to plausibly support the TVPA claim. Generalities untethered to specific individuals by time or circumstance simply do not satisfy the requirements of Twombly or Iqbal. Accordingly, the Plaintiffs' TVPA claims (Counts I and II) will be dismissed because they fail to satisfy the requirements of Twombly and Iqbal. Plaintiffs will be granted leave to file an Amended Complaint repleading the TVPA claims as to each Plaintiff, if that can be plausibly done.

### D. The Statute of Limitations Argument

Defendants contend that the statute of limitations bars (except Counts I and II) the claims of Leopoldo Gonzales, Reuel Eugenio Villagrana Canels, Manuel Marquez Esparza, Jacobo Esparza Aguilar, Rodrigo Canales Salazar, Uriel Cisneros, and Alonso Cisneros Ayala. Defendants argue that each of these plaintiffs'

contract, quasi-contract, and FLSA[2] claims are governed by a three-year statute of limitations and that their claims fell outside of the applicable three-year window.

Plaintiffs agree that the applicable statute of limitations is three years. However, they argue that Manuel Marquez Esparza and Jacobo Esparza Aguilar worked for Defendants in 2017 and that additional discovery is needed to determine whether plaintiffs Leopoldo Gonzales, Rodrigo Canales Salazar, Uriel Cisneros, and Cisneros Ayala, who all worked at Monterrey Concrete in 2016, were employed after November 7, 2016, the date on which the three year statute of limitations would start to run on their claims. In sum, the Plaintiffs take the view that discovery is needed to flesh out the facts pertinent to the statute of limitations as it applies to these seven Plaintiffs. That is a passing strange position because careful pre-filing inquiry would have provided evidence from which to plead a claim that is not time-barred. Further, even if the pre-filing inquiry was not adequate, inquiry made after the Motion to Dismiss was filed could have provided the factual basis for the asserted need for discovery. The failure to make such a showing would ordinarily necessitate dismissal of the claims of at least five of the Plaintiffs (excluding Esparza and Aguilar) as barred by the statute of limitation.

---

[2] The FLSA statute of limitations for willful violations is three years.

However, Plaintiffs argue that "all Plaintiffs' FLSA claims have been tolled because Defendants failed to display the statutorily-required poster informing Plaintiffs of their FLSA rights" and that all of their state-law claims have been tolled due to Defendants' oppressive conduct. Pls.' Opp. to Defs.' Mot. to Dismiss at 19.

As the Fourth Circuit has stated, equitable tolling is a "rare remedy available only where the plaintiff has exercised due diligence in preserving her legal rights." Cruz v. Maypa, 773 F.3d 138, 145 (4th Cir. 2014) (internal quotation marks omitted). Therefore, equitable tolling is only available in two circumstances, namely when (1) "the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant" or (2) "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (internal quotation marks omitted).

Under Virginia law, a statute of limitations is tolled when a defendant interferes with the plaintiff's ability to seek redress:

> When the filing of an action is obstructed by a defendant's ... using any ... direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought. Va. Code § 8.01-229.

26

> The Virginia Supreme Court has clarified that this provision applies beyond situations "when a defendant acts to conceal the existence of a cause of action." Newman v. Walker, 270 Va. 291, 618 S.E.2d 336, 338 (2005); c.f. Daniels v. Ga.-Pac. Corp., No. 97-2670, 1998 WL 539474, at *4 (4th Cir. Aug. 25, 1998) (unpublished). For example, a claim may be tolled when a defendant prevents service of process. Newman, 618 S.E.2d at 338. When filing is obstructed through fraudulent concealment, the claim will be tolled only if the fraud consisted of affirmative acts of misrepresentation and involved "moral turpitude."

Cruz, 773 F.3d at 138. This principle animates the tolling inquiry here.

Equitable tolling is a highly factual inquiry whether considered under the FLSA (Count III) or Virginia law (Counts IV, V, and VI). The necessary inquiry is best suited to analysis at the summary judgment stage of the case after there has been discovery and development of a record about the tolling issues. Thus, the Motion to Dismiss Counts III through VI as barred by the statute of limitations will be denied.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss will be granted in part and denied in part. The Motion to Dismiss is granted with respect to Counts I, Count II, and Plaintiffs' minimum wage FLSA claim in Count III. The Motion to dismiss is denied with respect to the FLSA overtime claim in Count III, Counts IV,

V and VI.  The Plaintiffs will be granted leave to file an Amended

Complaint.

It is so ORDERED.

_____/s/_____ _R E P_

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: September 2_, 2020

28