**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

ARTURO ESPARZA MACIAS, et al.,    )
    )
      Plaintiffs,    )
    )
v.    )    Case No. 3:19-cv-00830
    )
MONTERREY CONCRETE, LLC, and  )
JOSE DE LA ROSA,    )
    )
      Defendants,    )
    )

---

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A
PROTECTIVE ORDER AND FOR AN ORDER PERMITTING REMOTE
DEPOSITIONS OF CERTAIN PLAINTIFFS AND IN OPPOSITION TO
DEFENDANTS' MOTION FOR SANCTIONS**

Nine Plaintiffs are located in Mexico.  Due to visa and travel restrictions resulting from

the ongoing COVID-19 pandemic, it is impossible for these Plaintiffs to travel from Mexico to

Richmond for depositions noticed by Defendants for this month and next month.  Plaintiffs thus

submit this memorandum in support of their motion for a protective order under Federal Rule of

Civil Procedure 26(c) and for an order providing for remote depositions pursuant to Federal

Rule of Civil Procedure 30(b)(4) in lieu of in-person depositions in Richmond.  Remote

depositions are authorized by the Federal Rules and have become the near-universal practice of

courts across the United States in recent months.  The Court should allow remote depositions of

the nine Plaintiffs located in Mexico.

This memorandum is also submitted in opposition to Defendants' motion for the sanction

of dismissal as to one such Plaintiff (Mr. Jaime Marquez Esparza) (Doc. 38) who is located in

Mexico and—for the same reasons—was unable to appear in person for his noticed deposition

in Richmond.  Plaintiffs' counsel repeatedly told Defendants that Mr. Marquez Esparza was in Mexico and unable to appear in Richmond.  Defendants ignored Plaintiffs' good faith efforts to resolve the issue, and failed to make such efforts of their own before filing their sanctions motion.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The factual background of this action is summarized by the Court it its Memorandum Opinion of September 21, 2020 (Doc. 52) addressing Defendants' motion to dismiss.  As the Court is aware, Plaintiffs are 17 Mexican nationals who assert that Defendants arranged for them to travel to the United States under the Department of Labor's H-2B visa system for jobs in Virginia as concrete masons and cement finishers, but then then violated their legal and contractual obligations to Plaintiffs in multiple respects.

The Joint Pretrial Scheduling Order provides that "[c]ounsel are expected to resolve discovery disputes without filing pleadings or involving the Court.  If, after good faith effort, counsel are unable to resolve disputes, they will be resolved, if at all possible, in a telephone conference without the filing of pleadings."  (Doc. 30-1 at 2).   The Joint Proposed Pretrial Scheduling Order, entered September 9 (Doc. 36), reiterated the expectation that discovery disputes would be resolved through good faith efforts of counsel.  *Id.* at 3.

On August 28 and 31, 2020, Defendants served via Federal Express and U.S. Mail deposition notices for all 17 Plaintiffs, designating the depositions to occur at the offices of Defendants' counsel in Richmond, Virginia, on dates between September 11, 2020 and October 16, 2020 (Exhibit 1).  The first noticed deposition was that of Plaintiff Jaime Marquez Esparza, set unilaterally for September 11, 2020.

On September 1, 2020, the day after receiving the deposition notices, Plaintiffs' counsel advised Defendants' counsel via conference call that certain Plaintiffs were located in the

United States, and certain Plaintiffs were located in Mexico ("Mexico-Located Plaintiffs")—including Mr. Marquez Esparza.  Plaintiffs' counsel stated that the Plaintiffs in the United States would be made available in Richmond, and the Plaintiffs located in Mexico would be made available via Zoom due to the COVID-19 pandemic, border closures, and travel and visa restrictions related to the COVID-19 pandemic (Exhibit 2, "September 1, 2020 4:00 PM Email").  Zoom is a leading videoconferencing platform routinely used during the COVID 19 pandemic for remote depositions and other proceedings.

Counsel had another telephone conference on the issue of depositions on September 4 (Ex. 2 "September 4, 2020 4:24 PM Email").  During both the September 1 and September 4 conversations, and in related emails, Defendants' counsel refused to agree to any alternate arrangement for those individuals. Defense counsel did not explain how he expected them to come to Richmond given the exigent circumstances.  *Id.*   Defendants' counsel also expressed doubts that Mr. Marquez Esparza was in fact in Mexico.  *Id.*

On September 9, two days before the scheduled deposition of Mr. Marquez Esparza, Plaintiffs' counsel emailed Defendants' counsel and sought again to try to work out a path forward for the deposition of Mr. Marquez Esparza and the other Mexico-Located Plaintiffs. Plaintiffs' counsel stated:

> I can also reiterate—as we've discussed before, including on our call on September 1 and again on our call on September 4—that Jaime Marquez Esparza is in Mexico and thus is unable to sit for a deposition in Richmond.  On our calls, I described the multitude of facts that make in-person depositions in Richmond not feasible and not warranted.  Those factors include (but are not limited to): restrictions on travel between the US and Mexico based on COVID 19, closure of normal visa processes at US consulates in Mexico, limitation on visas to emergency situations, no proximity between clients and US consultates in Mexico, a high COVID fatality rate in Mexico, limited number of medical personnel in Mexico, and case law allowing Zoom depositions in light of COVID.

So please let me know if you will consent to conducting depositions of our 10 Mexico-based clients via Zoom, so we can proceed on that front (Ex. 2, "September 9, 2020 2:06 PM Email").

Defendants' counsel did not respond. Plaintiffs' counsel again e-mailed Defendants' counsel the next day, September 10, seeking once more to have a discussion, or, if necessary, seek the Court's guidance:

I have not heard back from you on my request below on whether you will consent to conducting the depositions of our 10 Mexico-based clients (including Jaime Marquez Esparza) via Zoom. Can you please let me know?

We have been trying to meet and confer with you on this issue for over a week, so as to avoid raising needless disputes with the Court, But if you intend to take the position that—somehow—the deposition noticed for 9/11 must proceed in Richmond tomorrow, despite our client being located in Mexico, then I am available the rest of the afternoon and tomorrow morning for a call with Judge Payne's chambers to sort this out.

(Exhibit 3, "September 10, 2:37 PM Email")

Defendants' counsel again failed to respond. Later in the day on September 10, Plaintiffs' counsel again e-mailed Defendants' counsel, attempting to reach closure on the issue and elicit Defendants' response on the same issue:

Hi Bob -- I still have not heard from you (or your colleagues) in response to my multiple requests that you consent to conducting Mr. Jaime Marquez Esparza's deposition via Zoom due to his location in Mexico. I also have not heard back from you on whether you think court intervention is necessary to resolve this discovery dispute. Accordingly, we are willing to continue the meet and confer process before we involve the Court. Let me know when you are available to discuss this issue further and what your clients' position is on our proposal. If we cannot reach agreement on our proposal, then we can involve the Court.

In the meantime, as we've told you multiple times since receiving the deposition notice, Mr. Esparza is in Mexico and we are unable to produce him for a deposition in Richmond tomorrow. We await your response on our proposal and remain happy to discuss these issues with you at your convenience. If for any reason you believe that involvement of the Court is required today or tomorrow morning, please advise immediately. Thanks.

Ex. 4.

4

Again, Defendants' counsel did not respond.

On the morning of September 11, Mr. Marquez Esparza did not appear at Defendants' counsel's offices in Richmond, just as Plaintiffs' counsel had repeatedly advised Defendants' counsel would happen.  At approximately 5:00 p.m. that day, Defendants filed a motion for sanctions seeking dismissal of Mr. Marquez Esparza's claims with prejudice. (Docs. 37, 38). Tellingly, Defendants did not attach to their motion any of the e-mails quoted above, in which Plaintiffs' counsel repeatedly reached out to address this issue, and Defendants' counsel never responded.

In light of Defendants' decision to raise the matter of deposition logsitics with the Court through their sanctions motion, Plaintiffs' counsel arranged a telephonic conference with the Court, which took place on September 16, to discuss the broader issue of how the depositions of the Mexico-Located Plaintiffs should proceed. (Doc. 47).  At that conference, the Court directed the parties to brief the deposition logistics issue and to address certain questions raised during the conference. (Doc. 47).  Plaintiffs now address those questions below, while also opposing the sanctions motion directed towards Mr. Marquez Esparza.

## II.     Argument

### A.     The Depositions of the Mexico-Located Plaintiffs Now in Mexico Should Be Conducted Remotely

Defendants have noticed the depositions of nine plaintiffs who are currently in Mexico. While Local Rule 30 "ordinarily" requires parties to sit for depositions within the District, "[e]xceptions to this general rule may be made on order of the Court when the party, or representative of a party, is of such age or physical condition, or special circumstances exist, as may reasonably interfere with the orderly taking of a deposition at a place within the division." The circumstances here -- an ongoing global pandemic combined with the Plaintiffs being

located in another country -- clearly qualify as the type of special circumstances warranting relief.

To that end, the following sections demonstrate that: (i) nine of the plaintiffs are presently in Mexico, (ii) it is not feasible for them to enter the United States at this time, (iii) authorizing remote depositions by Zoom or equivalent means is appropriate and consistent with multiple rulings of other courts that have confronted similar issues in the time of COVID-19, and (iv) contrary to Defendants' suggestions, Plaintiffs were not required to unilaterally scheduling depositions in times past, when the Mexico-Located Plaintiffs were in the United States (for all of them before this year, and for many of them, well before that).

### 1.    Nine Plaintiffs Are Currently in Mexico

The following nine plaintiffs are presently in Mexico: Victor De Los Reyes Rabanales, Cesar Ivan Esparza Aguillar, Uriel Cisneros, Leopoldo Gonzales, Jaime Marquez Esparza, Manuel Marquez Esparza, Reuel Eugenio Villagrana Canales, Luis Carlos Romero, and Alonso Cisneros Ayala.[1]  Attached as Exhibit 5 is proof that each Mexico-Located Plaintiff is in fact in Mexico, including (i) global positioning location information showing each Plaintiff's location in Mexico as of September 23, 2020, (ii) photographs of the plaintiffs taken in Mexico while holding current or recent Mexican newspapers, and (iii) information about how long each plaintiff has been in Mexico.  *See* Declaration of Manuel Gago (Exhibit 5).

Defendants have relied only on Facebook profile information to assert that certain of the Mexico Located Plaintiffs are not actually in Mexico.  That information, however, is plainly

---

[1]    Although Plaintiffs' counsel had initially communicated that there were ten plaintiffs currently in Mexico, it was subsequently determined that one of those ten, Rodrigo Canales Salazar, is in Texas.  Plaintiffs promptly informed Defendants and the Court of this fact (Doc. 51), and also that they will make their best efforts to bring Mr. Canales Salazar to Richmond for a deposition.  The parties have recently agreed that Mr. Canales Salazar's deposition will take place in Richmond on October 14, 2020.

outdated.  Facebook profile information is manually updated by the user.  If a Facebook user forgets to update their profile to reflect their current "Lives in ____" information, then the outdated information will remain on the profile.  Clearly, whatever Facebook profile information Defendants are relying upon with respect to the Mexico Located Plaintiffs is stale as indicated by the dispositive proof provided in Exhibit 8.[2]

> **2.    It is Not Feasible for the Plaintiffs Currently in Mexico to Come to the United States**

The Court recognized at the September 16 conference the challenges facing those seeking to travel from Mexico to the United States at this time, "I was the under the impression that there were current immigration rules that  foreclosed people coming into Mexico -- from Mexico into this country except with certain explicit permissions and for  certain reasons" (Sept. 16 Hrg. Tr. at 7).  As Sandra Andrea Grossman, an experienced immigration attorney in suburban Washington, D.C.,  explains, "it would be extremely difficult, if not impossible, for the Mexico-Located Plaintiffs to gain lawful admission to the United States to appear for a deposition in the near future, including the remainder of 2020."  Grossman Decl. ¶ 13 (Exhibit 6).  Because the Mexico-Located Plaintiffs cannot legally and physically comply with the Notices of Deposition as scheduled, a protective order should be issued under Rule 26(c) of the Federal Rules of Civil Procedure which provides that a Court may issue a protective order, for good cause shown, to "protect a person from annoyance, embarrassment, oppression, or undue burden or expense." Certainly, an impossible burden—requiring a party to be somewhere he is unable to get to—

---

[2]    During the meet and confer teleconference that occurred on September 4, 2020, Plaintiffs' counsel asked Defendants' counsel why he believed Mr. Jaime Marquez Esparza was in the United States.  Defendants' counsel refused to state why, claiming the information was "work product."  Plaintiffs' counsel pointed out that Defendants' counsel would have to reveal whatever "work product" he was relying upon if and when the matter came before the Court. Defendants' counsel still refused to provide the information, and only did so for the first time when he filed the sanctions motion.

qualifies as an "undue burden."

As Ms. Grossman explains, in normal times, to travel to the United States the Mexican

Located Plaintiffs would need to obtain B1/B2 visitor visas.  However, that entire process has

been upended by the pandemic:

> The Department of State suspended routine visa operations in March of 2020 due to the COVID-19 pandemic, cancelling visa interviews at U.S. Embassies and consulates worldwide.  The limited number of consular staff remaining overseas have been dedicated to emergency services for U.S. citizens, U.S. permanent residents, and foreign nationals whose admission is in the national interest.  There is currently a great deal of confusion regarding when consulates will be reopening.  According to the U.S. Embassy in Mexico's website, interviews for B1/B2 visas remain suspended except for emergency appointments.  While individual U.S. Consulates have recently begun to show availability for non-immigrant visas (hereinafter "NIVs"), it appears that listed NIV appointments are related to student visa processing and visa *renewals* only, and not to new B1/B2 visa applications.  At this point, it is unclear in what capacity consulates are currently open or when they will be fully operational in the future.

*Id*. ¶5.

Further, the application and interview process required once the consulates become fully

operational would entail further waiting and uncertainty.  *Id*.  There is also the possibility of

seeking admission under a Significant Public Benefit Parole issued by the U.S. Citizenship and

Immigration Service in lieu of a visa.  But that process also would be slow and uncertain at best.

"Generally, an applicant must present evidence that he or she first applied for a visa and was

denied in order to pursue a parole, which is considered an extraordinary benefit of last resort."

*Id*. ¶10.  Currently, the average processing time for a parole application is two to five months,

with expedited processing generally limited to life threatening or other extremely urgent

situations.  *Id*. ¶11.  In Ms. Grossman's experience, "USCIS is unlikely to expedite processing to

accommodate an upcoming deposition date."  *Id*.

Even if the foregoing obstacles could be overcome, given the closure at the land border between Mexico and the United States, "it is unclear whether the Mexican Located Plaintiffs would be able to enter the United States by land even with a valid visa or parole document." *Id*. ¶12.  Air travel would be available in such circumstances—if a visa or parole could timely be obtained and travel arranged—but would even then entail all of the risk of requiring these nine men to travel between two of the countries with some of the highest numbers of COVID cases in the world (United States is number 1, Mexico number 7)[3], likely without sufficient time to quarantine on the front and back end.  Even with the use of face masks and distancing, such travel entails unnecessary and undue risk.  Fortunately, as discussed in the next section, there is a better way.

> **3.      Remote Depositions by Zoom or Equivalent Means are Appropriate and Reflect the Widespread Consensus Among Courts Confronting Similar Issues During the Pandemic.**

In light of the extraordinary circumstances of the COVID pandemic, coupled with the Mexico-Located Plaintiffs' inability to travel to the United States and this case's pretrial schedule, video remote depositions are an appropriate solution.  Federal Rule of Civil Procedure 30(b)(4) provides that "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means."  Remote depositions, of the type requested herein, are logistically feasible, will guarantee the safety and welfare of the parties and others present at the depositions, address the impact of travel bans and restrictions, and maintain expedited discovery timelines set by the court and agreed to by parties.  Federal courts confronting similar safety and access issues arising from the pandemic have consistently

---

[3] World Meters Info Coronavirus Page, https://www.worldometers.info/coronavirus/ (last visited September 22, 2020).

supported the use of remote depositions by Zoom or equivalent means, including in cases ranging from trade secrets to products liability. *See, e.g.*, *Fouad v. Milton Hershey Sch. & Tr.*, 2020 WL 4228278, at *1–2 (M.D. Pa. July 23, 2020) (recognizing the "rising tide of courts across the country that have ordered remote depositions in light of the coronavirus pandemic" in finding a remote deposition appropriate to avoid "undue risk for all parties involved."); *see also Sonrai Sys., LLC v. Romano*, No. 16 CV 3371, 2020 WL 3960441, at *2 (N.D. Ill. July 13, 2020) ("To protect Court personnel, the bar, and the public against the severe risks posed by COVID-19, federal courts around the country . . . have authorized video teleconferencing for both criminal and civil proceedings . . . ."); *Rouviere v. Depuy Orthopaedics, Inc.*, 2020 WL 3967665 (S.D.N.Y. Jul. 11, 2020) ("Conducting depositions remotely is becoming the 'new normal.'").

Courts have remarked that "leave to take remote depositions" should be "granted liberally." *In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *7 (N.D. Ill. June 25, 2020). "[O]nce the proponent of taking a deposition by remote means makes a sufficient threshold showing, the burden then shifts to the opposing party to show how it would be prejudiced if the deposition were taken in that way." *Id.* Numerous district courts have found health concerns arising from the pandemic to be such a sufficient threshold showing. *See*, *e.g.*, *Learning Res., Inc. v. Playgo Toys Enterprises Ltd.*, 2020 WL 3250723, at *2–3 (N.D. Ill. June 16, 2020) ("the health concerns created by the COVID-19 pandemic create 'good cause' for the entry of an order requiring that . . . [the] deposition take place by remote videoconference under the circumstances in the case"); *ResCap Liquid. Tr. v. Primary Res. Mort.*, 2020 WL 1280931, at *3 (D. Minn. Mar. 13, 2020) ("COVID-19's unexpected nature, rapid spread, and potential risk establish good cause for remote testimony").

The safety risks driving these decisions continue unabated, with over 200,000 COVID-19-related deaths in the United States, and over 3,000 here in the Commonwealth of Virginia.[4] Indeed, requiring that nine plaintiffs travel from Mexico exposes *all* in-person deposition participants—including translators, court reporters, counsel, and the parties themselves—to additional risk of illness and possible death.  The Centers for Disease Control and Prevention have warned that the "COVID-19 risk in Mexico is high" and recommend that "travelers avoid all nonessential international travel to [and from] Mexico."[5]  Similarly, the Virginia Department of Health continues to emphasize that "[b]ecause travel increases your chances of getting infected and spreading COVID-19, staying home is the best way to protect yourself and others from getting sick."[6]  Just this week, the New York Times documented the increased danger and stark toll of COVID-19 in Mexico, " No part of the world has been as devastated by the pandemic as Latin America. Mexico, Brazil, Peru and other Latin American countries - hobbled by weak health systems, severe inequality and government indifference -- have several of the highest deaths per capita from the virus in the world."[7]

Courts across the country have held parties opposing remote depositions to a high standard during the pandemic:  the prejudice shown, if any, must outweigh the safety risks of in-

---

[4] *The Coronavirus Outbreak*, The New York Times (September 22, 2020), https://www.nytimes.com/2020/09/22/world/covid-coronavirus.html; https://www.worldometers.info/coronavirus/country/us/
[5] *Covid-19 in Mexico*, CDC Travel Notices (Aug. 6, 2020), https://www.cdc.gov/travel/notices/warning/coronavirus-mexico.
[6] *Coronavirus Travelers*, Virginia Department of Health (September 21, 2020), https://www.vdh.virginia.gov/coronavirus/coronavirus/travel-to-areas-with-widespread-ongoing-community-spread/.
[7] Azam Ahmed, In the Epicenter of Mexico's Epicenter, Feeling like  'Trapped Animal', N.Y. Times (Sept. 23, 2020),(https://www.nytimes.com/2020/09/23/world/americas/mexico-coronavirus-covid-iztapalapa.html).

person depositions.  One Court emphasized this "new reality" in opting for a remote deposition even though the deposition was anticipated to be controversial:

> [W]e find that the plaintiff's concern that conducting this deposition in-person would create undue risk for all parties involved is not outweighed by the defendants' concerns that this deposition promises to be a controversial one.  While we recognize, as many courts have, that remote depositions are perhaps not ideal and may require more patience and time from those involved, they are an appropriate by-product of this new reality in which we find ourselves."

*Fouad*, 2020 WL 4228278, at *1–2.

Here the basis for authorizing remote depositions is even stronger than in the cases cited above, which involved depositions of parties or witnesses located in the United States.  The above precedents would amply support holding *all* of the depositions remotely, including those of Plaintiffs located in the United States.  Nevertheless, as previously noted, in order to compromise and accommodate Defendants' interests in in-person depositions, Plaintiffs have agreed to in-person depositions in Richmond for the eight plaintiffs currently in the United States, and two such depositions have already taken place.  For the Mexico-Located Plaintiffs, however, requiring in-person depositions not only would be against the overwhelming weight of recent judicial authority, but would be a practical impossibility.

**4.     Plaintiffs were not obligated to schedule these depositions when the Mexico Located Plaintiffs were still in the country, which was long before discovery began.**

At the September 16 status conference, Defendants' counsel raised the issue of whether Plaintiffs should have scheduled depositions of the Mexico-Located Plaintiffs while they were still in United States (Tr. 12).  Defendants cite to Rules 27 and 30 of the Federal Rules of Civil Procedure, which allow depositions in certain exigent circumstances before an action is filed, or after an action is filed but before the action has been commenced.  *Id.* at 27.

Defendants assert that Rule 27, which may be used in extraordinary circumstances to allow potential future litigants to file a petition to preserve testimony before the filing of an action, should have been used by plaintiffs to depose any plaintiff who returned to Mexico before this action was filed on November 4, 2019.  As the Gago Declaration describes, four of the plaintiffs have been in Mexico since 2017 to 2018.  The argument that depositions of these individuals should have been taken by Plaintiffs under Rule 27 has four flaws.

First, Rule 27 provides for a petitioner to take a deposition to preserve testimony prior to filing an action upon a showing, among other things, "that the petitioner expects to be a party to an action cognizable in a United States court but cannot presently bring it or cause it to be brought."  But at the point that these four plaintiffs returned to Mexico, they had not yet spoken with counsel concerning potential claims that they could assert against Defendants—the contacts between Plaintiffs and counsel LAJC did not begin until in or around May 2019.  As such, they were in no position to file petitions to preserve their testimony with respect to a potential future lawsuit.

Second, this action was filed well before the outbreak of the COVID pandemic in the United States, and the four plaintiffs returned to Mexico before the end of 2018, long before the coronavirus had even been identified.  Assuming *arguendo* that Plaintiffs even would have been contemplating litigation in the United States at that time, Plaintiffs could not possibly have anticipated then that visa and travel impediments brought on by a once-in-a-century global pandemic would emerge.

Third, Rule 27 which provides that a party "may file" a petition, is permissive, not mandatory.  It is typically filed when a potential witness is ill or aging, and there may be no other way to get the testimony.  But there is no requirement that a party take such preservation

testimony before an action is filed.  The risk of not doing so is that testimony may be lost.  *See,*

*Application of Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra*, 198 F.3d 473, 484

(4th Cir. 1999) (citing *Ash v. Cort*, 512 F.2d 909, 911 (3d Cir. 1975) ("Rule 27 is an

extraordinary remedy used to obtain and preserve testimony in anticipation of trial when that

testimony may otherwise be lost.)"  But here, as discussed above, there are adequate procedures

for actually taking the depositions—namely, by means of Zoom or other similar software

platforms—which are being used every day by courts around the country.  Accordingly, no

testimony is at risk of being lost.

Fourth, whether or not a preservation deposition could have been taken at some time in

the past, does not change the fact that the four plaintiffs at issue cannot come to the United States

for the depositions on the schedule requested by Defendants.

For the five other Mexico-Located Plaintiffs, who returned to Mexico in November and

December 2019, Defendants appear to argue that Plaintiffs' counsel should have sought their

depositions under Rule 30(a)(2)(iii), which provides that leave of court to notice a deposition is

required "before the time specified in Rule 26(d) unless the party certifies in the notice, with

supporting facts, that the deponent is expected to leave the United States and be unavailable for

examination in this country after that time."  This provision is also inapplicable for several

reasons. Most notably, the complaint was not served until January 2, 2020, so no Plaintiffs could

have been deposed before that date.

First, as with Rule 27, these plaintiffs left the United States before the COVID pandemic

struck North America, and well before COVID immigration and travel restrictions began to be

imposed in March 2020.  They could not possibly have anticipated that return would become

infeasible and the plaintiffs would be later "unavailable for examination in this country" as required by Rule 30.

Second, nothing in Rule 30(a)(2)(iii) requires a party to seek a deposition under that provision. Like Rule 27, it provides a discovery option, not a requirement.

Third, it is the Defendants who are seeking to take depositions of plaintiffs, and if an earlier deposition in the United States was preferable to them, they should have sought it. It would have been obvious to Defendants upon filing of the Complaint in November 2019 and service of the Complaint in January 2020 that each of the Plaintiffs was a Mexican national who came here under a time-limited visa, and whose continued status and residence in the United States was uncertain. If Defendants had concerns about Plaintiffs becoming unavailable for depositions in the United States, it was their burden to seek those depositions, which they did not.

Needless to say, none of the parties could have anticipated the far-reaching and long-lasting effects of COVID on the ability to conduct the pretrial litigation process. But fortunately, there is a solution readily at hand: remote depositions of the sort authorized in legions of cases over the past several months. As such, Plaintiffs are all making themselves available for a deposition. The Court should exercise its authority under Fed. R. Civ. P. 30(b)(4) to authorize remote depositions of the Mexico-Located Plaintiffs.

**B.      The Court Should Deny Defendants' Motion for Sanctions**

Defendants' motion for sanctions is entirely without merit for the above reasons and more.

**1.      Defendants rebuffed Plaintiffs' good-faith attempts to meet and confer.**

This Court's Local Rules require that parties "confer to decrease, in every way possible[,]" the filing of unnecessary discovery motions.  No motion concerning discovery matters may be filed until counsel shall have conferred in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matters in controversy.  The Court will not consider any motion concerning discovery matters unless the motion is accompanied by a statement of counsel that a good faith effort has been made between counsel to resolve the discovery matters at issue."  Local R. 37(E).  As discussed above, the Court's own Scheduling Order is to the same effect.  Defendants have not met these requirements.

After receiving Plaintiffs' in-person deposition notices on August 31, Plaintiffs' counsel immediately advised Defendants' counsel via conference that the majority of the plaintiffs could not sit for in-person depositions in Richmond because they now reside in Mexico.  Plaintiffs repeatedly attempted to confer with Defendants' counsel on the impossibility of in-person depositions and offered remote depositions—a widely accepted alternative (Exs 2, 3 ).  In the days before the first deposition on September 11, Plaintiff's counsel reached out to Defendants' counsel three separate times to seek practical accommodation for a deposition notice with which it was physically and legally impossible to comply.  Defendant's counsel's refused to respond.

Had the parties conferred on this matter as required by Rule 37(E) and the court's Scheduling Order, Defendants' counsel would understand the circumstances preventing Mr. Marquez Esparza from attending the deposition on September 11, obviating Defendants' misguided sanctions motion.  However, Defendants' counsel failed to respond to the three emails, detailed above, explaining that Mr. Marquez Esparza was unavailable for an in-person deposition and attempting to schedule a remote deposition.  And Defendants' counsel failed to respond prior to the time scheduled for the deposition to Plaintiffs' counsel's request as to

whether a call to the Court was necessary.  In short, Defendants' counsel made no effort, good faith or otherwise, to "confer[] in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matter[] in controversy."  Local Rule 37(E).

Defendants appear to take the position that they were justified in refusing any discussions because they had previously made a blanket statement that they would not consent to remote depositions.  But this Court's rules call upon the parties to make good-faith efforts "to resolve discovery disputes without filing pleadings or involving the Court."  *Flame S.A. v. Indus. Carriers, Inc.*, 2014 WL 4809842, at *5 (E.D. Va. Sept. 25, 2014).  "Rushing to the Court with a discovery dispute . . . evidences the lack of a good faith effort to resolve discovery disputes without Court intervention, as is required by this Court's rules.."  *Id.*  Had Defendants' counsel simply stated to Plaintiffs' counsel that court involvement was necessary to resolve the dispute, the parties would have contacted the Court sooner than they eventually did.  But, under no circumstances would the deposition have taken place in Richmond on September 11, because the deponent was in Mexico and was not able to travel to Richmond.

### 2.      Plaintiff's failure to appear was substantially justified.

Plaintiff did not appear to sit for an in-person deposition in Richmond because he was physically and legally prevented from traveling from Mexico to the United States due to COVID-19 and current visa and travel restrictions.  Sanctions for failing to attend a deposition are inappropriate if "the failure was substantially justified."  *LaFleur v. Dollar Tree Stores, Inc.*, 2013 WL 12181782, at *2 (E.D. Va. Oct. 7, 2013) (citing Fed. R. Civ. P. 37(d)(3)).  "The substantially justified standard is met when there is a genuine dispute as to proper resolution or if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."  *Decision Insights, Inc. v. Sentia Group, Inc.*, 311 Fed. Appx. 586, 599 (4th Cir. 2009) (citations and quotations omitted).  For example, "a family member's funeral . . . [or] experiencing a flat

tire en route to the deposition might constitute a substantial justification for failing to appear." *LaFleur*, 2013 WL 12181782, at \*3, \*4.

If a funeral and a flat tire can constitute substantial justification, the intractable physical and legal impediments to international travel outlined above qualify. A "reasonable person," acting in good faith and aware of the health and safety impacts of the pandemic and U.S. immigration policy, would undoubtedly "think it correct" that a Mexico resident could not travel thousands of miles to cross the border and attend an in-person deposition in a conference room the United States.

### 3. Dismissal is an inappropriate sanction.

While no sanctions at all are warranted here, it is particularly clear that the dismissal sanction requested by Defendants would be manifestly excessive and inappropriate. Mr. Marquez Esparza is and always has been offering to sit for a deposition in this case; it is merely a matter of whether it can be done remotely.

When considering sanctions, courts take into account "(1) 'whether the non-complying party acted in bad faith'; (2) the kind and degree of prejudice that noncompliance caused its adversary; (3) the need to deter the specific sort of noncompliance; and (4) 'whether [any] less drastic sanctions' would be effective. *Sines*, 2020 WL 3106318, at \*6 (citing *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001). Dismissal is a last resort and should be used only on rare occasion. *See Taylor v. Oak Forest Health and Rehab*, LLC, 302 F.R.D. 390, 393 (M.D.N.C. Sept. 9, 2014) (citing *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989) ("[D]ismissal is not a sanction to be invoked lightly."); *Hellebuyck v. Gucci America*, 1:19-cv-1556, 2020 WL 4904267 at \*2 (E.D. Va. Aug. 18, 2020). ("Dismissal or non-monetary sanctions that are the equivalent of dismissal should be used sparingly and only in situations where their deterrent value cannot be substantially achieved by use of less drastic sanctions.").

Absent something more, dismissal is not an appropriate sanction for failure to appear, even when that non-appearance is not justified. In *Allen v. Cogent Communications, Inc.*, 1:14cv459, 2015 WL 236628 at *2-3 (E.D. Va. 2015), even though one of the plaintiffs failed to establish good reason for failing to appear at their deposition, the court ruled that, "dismissal of [the non-appearing plaintiff] is not warranted on these facts." *Id.* at 2. Here where there was no way for Mr. Marquez Esparza to appear at his deposition, dismissal should not even be considered.

Furthermore, not only have Plaintiffs acted in good faith, but Defendants suffered no prejudice here from the conduct giving rise to the sanctions motion. Defendants' complaint in reality is not that Mr. Marquez Esparza could actually have been in Richmond on September 11, but that his counsel should have sought a protective order before September 11 rather than shortly thereafter. Even if that was correct, Defendants have suffered no prejudice from that few day delay, and even that short delay could have been avoided if Defendants' counsel had engaged in discussions to make commonsense arrangements to accommodate the circumstances. For example, Defendants' counsel could have—and should have—cancelled the court reporter and videographer on September 1 or September 4, after Plaintiffs' counsel informed him that Mr. Marquez Esparza was in Mexico and unable to attend the deposition on September 11. Further, discovery remains open in this case for three more months, Defendant will have ample opportunity to obtain the testimony sought if they only agree to remote depositions.

Given the above, dismissal is wholly inappropriate here, and no sanction at all is warranted. At most, to the extent that the Court concludes that Plaintiff's failure to seek a protective order earlier warrants sanction, it should impose only a nominal sanction. *See, e.g., Batt v. Kimberly-Clark Corp.*, 438 F.Supp.2d 1315, 1318 (N.D. Ok. 2006) (concluding that even

where a party was "required to take some action to stay the deposition until the parties, with or without the Court's assistance, could resolve the dispute," the court imposed only nominal expenses in recognition that the other party "proceeded with the noticed deposition after having been told on several occasions that [the deponent] was unavailable" and could have avoided the cost of a [m]otion for [s]anctions by contacting the court to resolve the dispute).

## III.    Conclusion

For these reasons, Plaintiffs respectfully request that the Court: (i) enter a protective order providing that the depositions of the Mexico-Located Plaintiffs shall take place remotely pursuant to Rule 30(b)(4) of the Federal Rules of Civil Procedure, using Zoom or a similar video based platform, and (ii) deny Defendants' motion for sanctions against Mr. Jaime Marquez Esparza.

September 23, 2020                    Respectfully submitted,


                                     /s/ Preston M. Smith
                                     Preston Smith (VA Bar # 86908)
                                     Ian Hoffman (VA Bar # 75002)
                                     ARNOLD & PORTER KAYE SCHOLER LLP
                                     601 Massachusetts Ave., N.W.
                                     Washington, D.C.  20001-3743
                                     Telephone:  +1 202.942.6544
                                     Facsimile:  +1 202.942.5999
                                     E-mail:  preston.smith@arnoldporter.com
                                     E-mail:  ian.hoffman@arnoldporter.com

                                     Rachel Colleen McFarland (VA Bar # 89391)
                                     Jason Blair Yarashes (VA Bar # 90211)
                                     Legal Aid Justice Center
                                     1000 Preston Avenue, Suite A
                                     Charlottesville, VA 22903
                                     Telephone :  434-977-0553
                                     Fax: 434-977-0558
                                     Email: rmcfarland@justice4all.org
                                     Email: jasony@justice4all.org

                                     Nicholas Cooper Marritz (VA Bar # 89795)
                                     Simon Sandoval-Moshenberg (VA Bar # 77110)
                                     Legal Aid Justice Center
                                     6066 Leesburg Pike, Suite 520
                                     Falls Church, VA 22041
                                     Telephone:  703-778-3450
                                     Fax: 703-778-3454
                                     Email: nicholas@justice4all.org
                                     Email:  simon@justice4all.org


                                     *Counsel for Plaintiffs Arturo Macias et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 23rd  day of September 2020, I filed a copy of the

foregoing with the Court's electronic filing (CM/ECF) system, which caused a copy of the

foregoing to be served on all counsel of record.


/s/ Preston M. Smith
Preston M. Smith (VA Bar # 86908)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C.  20001-3743
Telephone:  +1 202.942.6544
Facsimile:  +1 202.942.5999
E-mail:  preston.smith@arnoldporter.com

*Counsel for Plaintiffs Arturo Macias et al.*