**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

ARTURO ESPARZA MACIAS, et al.,    )
    )
    Plaintiffs,    )
    )
v.    )    Case No. 3:19-cv-00830
    )
MONTERREY CONCRETE, LLC, and  )
JOSE DE LA ROSA,

    Defendants,

_____

**Declaration of Sandra A. Grossman**

1. My name is Sandra Andrea Grossman and I am an attorney in Bethesda, Maryland practicing immigration and international law.  I am the joint owner and managing partner of Grossman Young & Hammond (hereinafter "GYH"), an internationally recognized immigration law firm and INTERPOL Defense practice.

2. I have significant experience in matters related to the practice of immigration law and international human rights law, including advocacy before INTERPOL.  I am an active member of the American Immigration Lawyers Association ("AILA"), a member of the Department of State liaison committee within AILA, a former adjunct professor in immigration law at the Washington College of Law at American University, and a member of the Editorial Board of Bender's Immigration Bulletin (LexisNexis), which is a bi-monthly digest that keeps immigration practitioners up to date with new laws, regulations, and expert analysis. I have published numerous articles, law journals, and publications on immigration law. I have received several accolades during my career as

1

an immigration attorney including a recognition from the Washingtonian Magazine naming me as one of Washington, DC's Top Lawyers.  I have appeared as an immigration law expert in several proceedings including before DC Bar ethics counsel, in the Montgomery County Circuit Court, and in public media broadcasts.

3.  I am providing this Declaration at the request of Counsel for Plaintiffs in the above-captioned action to explain why, to the best of my information and belief, it would be incredibly difficult, if not impossible, for the Plaintiffs who are currently in Mexico (the Mexico Located Plaintiffs), and who I understand are Mexican citizens, to gain lawful admission to the United States to appear for a deposition in the near future.

**Obtaining a Visitor's Visa**

4.  In order for the Mexico Located Plaintiffs to be able to travel to the United States, they would first need to secure a B-1/B-2 visitor visa.  While civil litigation is a legal basis for obtaining a visitor visa to the United States,[1] due to the current global health crisis, and made even more difficult by the fact that I understand that the Plaintiffs are persons of limited means, it will be nearly impossible for them to successfully procure such a visa.

5.  The Department of State suspended routine visa operations in March of 2020 due to the COVID-19 pandemic, cancelling visa interviews at U.S. Embassies and consulates worldwide.[2]  The limited number of consular staff remaining overseas have been

---

[1] *See* 9 FAM 402.2-5(B) (U) (4) ("Aliens should be classified B1 visitors for business, if otherwise eligible, if they are traveling to the United States to: (1) Engage in commercial transactions, which do not involve gainful employment in the United States (such as a merchant who takes orders for goods manufactured abroad); (2) Negotiate contracts; (3) Consult with business associates; **(4) Litigate**; (5) Participate in scientific, educational, professional, or business conventions, conferences, or seminars; or (6) Undertake independent research.") (emphasis added).

[2] *See* Department of State, https://travel.state.gov/content/travel/en/News/visas-news/suspension-of-routine-visa-services.html (last checked September 21, 2020).

dedicated to emergency services for U.S. citizens, U.S. permanent residents, and foreign nationals whose admission is in the national interest.[3] There is currently a great deal of confusion regarding when consulates will be reopening.  According to the U.S. Embassy in Mexico's website,  interviews for B1/B2 visas remain suspended except for emergency appointments.[4] While individual U.S. Consulates have recently begun to show availability for non-immigrant visas (hereinafter "NIVs"), it appears that listed NIV appointments are related to student visa processing and visa *renewals* only, and not to new B1/B2 visa applications.[5] At this point, it is unclear when consulates will be fully operational..

6.   Once the consulates become fully operational, the first step in obtaining a B1/B2 visa would be to apply with the Department of State by electronically completing and submitting Form DS-160, the Non-Immigrant Visa Application. This form requires the applicant to answer a series of questions regarding the details of their intended travel and their legal admissibility to the United States.

7.   The U.S. Immigration and Nationality Act ("INA") sets forth multiple grounds of inadmissibility in section 212(a) that bar an individual from qualifying for a visa. For example, a foreign national might be inadmissible for previous immigration violations, criminal matters, or due to foreign policy concerns, among numerous other reasons. Once the form is complete, and the applicant pays the non-immigrant fee, the next step is

---

[3] *See* Department of State, https://travel.state.gov/content/travel/en/News/visas-news/phased-resumption-routine-visa-services.html (last checked September 21, 2020).
[4] *See* Department of State, https://mx.usembassy.gov/status-of-u-s-consular-operations-in-mexico-in-light-of-covid-19/ (last checked September 21, 2020).
[5] *See id.*

to schedule an interview with the U.S. consulate in their country of residence, in this case, Mexico.

8.  If the Mexico Located Plaintiffs *were able* to schedule an appointment (which is highly unlikely at this time), they would need to appear before a U.S. consular officer to demonstrate they are eligible for a visitor visa. Section 214(b) states that foreign nationals are presumed to be immigrants until they prove to a consular officer that their intention is to travel to the United States for a temporary period.[6] Therefore, the burden is on the foreign national to prove they do not intend to overstay a visa by demonstrating extensive ties to their home country, including employment, family, and property ties. Each Plaintiff will be required to demonstrate that they can afford to make the trip to the United States and back, that they will have the means to support themselves while in the United States, and that they will not engage in unauthorized employment.  Overcoming the presumption of immigrant intent is very difficult in my experience for people of limited means.

9.  At the interview, the consular officer will also consider any inadmissibility grounds that apply to the visa applicant.[7] For example, an individual who was previously unlawfully present in the United States could be subject to a three or ten-year inadmissibility bar to the United States.[8]

10. Consular officers may consider any and all available information when adjudicating a visa application.[9] For example, a consular officer may consider that the Plaintiffs may

---

[6] *See* INA § 214(b).
[9] *See* INA § 221(g).
[9] *See* INA § 221(g).
[9] *See* INA § 221(g).

4

qualify for what is known as U Nonimmigrant Status, upon arrival in the United States. This type of visa is available to certain victims of crimes who aid in the investigation and/or prosecution of such crimes. A consular officer may deny a NIV if the individual is potentially eligible for a permanent status in the United States because it could theoretically indicate immigrant intent.

**Obtaining Humanitarian or Significant Public Benefit Parole**

11. Individuals involved in civil legal proceedings may request a Humanitarian or Significant Public Benefit Parole in lieu of a visa.[10] Generally, an applicant must present evidence that he or she first applied for a visa and was denied in order to pursue a parole, which is considered an extraordinary benefit of last resort.[11] While not required, having a U.S. financial sponsor weighs heavily in favor of a discretionary grant of parole. According to the U.S. Citizenship and Immigration Service (hereinafter "USCIS"), when adjudicating parole requests, the following ten factors will be evaluated:

- "Whether the purpose of the parole request may be accomplished within a specific, temporary period of time;

- Whether the beneficiary intends to leave the United States once their parole expires or has means to obtain lawful immigration status during the parole authorization period or any re-parole period that is envisioned (where applicable);

- Whether there is evidence of any national security concerns;

---

[10] U.S. Citizenship and Immigration Services, https://www.uscis.gov/humanitarian/humanitarian-or-significant-public-benefit-parole-for-individuals-outside-the-united-states (last checked September 21, 2020).
[11] *See id.*

- Whether there is evidence of any criminal history or previous immigration violations;

- Whether there is evidence of any previous participation in fraud;

- Whether the beneficiary's presence would benefit a U.S. citizen or lawful permanent resident or community in the United States;

- Whether the beneficiary will have sufficient financial support while in the United States;

- Evidence of the beneficiary's character;

- The effect of the beneficiary's presence in a community in the United States; and

- Whether there are other means, other than parole, that are available to the beneficiary so they can travel to and remain in the United States for the stated parole purpose, such as the ability or inability to obtain a visa."[12]

12. The application process for parole includes submission of Form I-131 to USCIS, accompanied by supporting documentation to demonstrate the reason for travel and addressing of the aforementioned factors. The average processing time for a USCIS parole application is currently two to five months.  Expedited processing is generally limited to life threatening or other extremely urgent situations.[13] In my experience, USCIS is unlikely to expedite processing to accommodate an upcoming deposition date.

**Feasibility of Travel**

---

[12] *See id.* (emphasis added).
[13] *See id.*

6

13. According to a Fact Sheet[14] published by the Department of Homeland Security as well as a Department of State press release,[15] the land border between the United States/Mexico is currently closed to non-essential travel. Civil litigation is not listed under essential travel. Arguments could be made that an approved parole application for litigation constitutes essential travel. Nevertheless, given the pandemic and significant travel restrictions, it is unclear whether the Mexican Located Plaintiffs would be able to enter the United States by land even with a valid visa or parole document. The restrictions to the land border, however, do not apply to air travel at this time.[16] This means that if the Mexican Located Plaintiffs were able to secure a visa or parole document (which is extremely unlikely based on the above), they would have to travel by air to the United States.

**Conclusion**

14. Based on the foregoing, in my opinion it would be extremely difficult, if not impossible, for the Mexico Based Plaintiffs to gain lawful admission to the United States to appear for a deposition in the near future, including the remainder of 2020.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 23, 2020.

*Sandra Grossman*
Sandra Grossman (Sep 23, 2020 12:26 EDT)
Sandra Grossman

---

[14] Department of Homeland Security, https://www.dhs.gov/news/2020/09/18/fact-sheet-dhs-measures-border-limit-further-spread-coronavirus (last checked September 21, 2020).
[15] Department of State, https://mx.usembassy.gov/travel-restrictions-fact-sheet/ (last checked September 21, 2020).
[16] *See id.*