```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                       Richmond Division
```

ARTURO ESPARZA MACIAS,
et al.,

    Plaintiffs,
v.                                          Civil Action No. 3:19cv830

MONTERREY CONCRETE LLC,
et al.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER AND FOR AN ORDER PERMITTING REMOTE DEPOSITIONS OF CERTAIN PLAINTIFFS (ECF No. 57). For the reasons stated below, the motion will be granted.

**BACKGROUND**

Arturo Esparza Macias, Victor de los Reyes Rabanales, Cesar Ivan Esparza Aguilar, Jaime Marquez Esparza, Manuel Marquez Esparza, Jacobo Esparza Aguilar, Jose Luis Diaz Gomez, Ricardo Guadalupe Gomez Torres, Rodrigo Canales Salazar, Bladimir Guadalupe Macias Esparza, Catarino Odon Hernandez, Francisco Odon Hernandez, Reuel Eugenio Villagrana Canales, Alonso Cisneros Ayala, Leopoldo Gonzales, Luis Carlos Romero, and Uriel Cisneros (collectively the "Plaintiffs") filed this action on November 6, 2019 against Defendants Monterrey Concrete, LLC ("Monterrey") and Defendant Jose De La Rosa ("De La Rosa" and with Monterrey the

"Defendants"). Plaintiffs are Mexican nationals who came to the United States on H-2A and H-2B visas between 2014 and 2018 to work for Monterrey, a concrete contracting business located in Henrico, Virginia and owned and overseen by De La Rosa. Plaintiffs seek damages incurred as a result of Defendants' alleged violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589 et seq., the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Virginia common law of contracts. See Am. Compl., ECF No. 84.

The discovery dispute at hand arose out of Plaintiffs' disclosure, after Defendants had noticed Plaintiffs' depositions in Richmond, Virginia, that nine of the seventeen plaintiffs are in Mexico. On August 28 and August 31, 2020, Defendants served Plaintiffs with deposition notices for dates between September 11 and October 16 in Richmond. Pls.' Mem. at 2, ECF No. 58. Following notice of Plaintiffs' depositions, the parties' counsel participated in two conference calls, one on September 1 and September 4. Id. at 2-3. During these calls, Plaintiffs' counsel informed Defendants' counsel that ten of the Plaintiffs are in Mexico and therefore could not attend depositions in Richmond because of the COVID-19 pandemic and related government-imposed travel and visa restrictions. Id. at 3. Plaintiffs' counsel proposed conducting the depositions of the Plaintiffs in Mexico

remotely by Zoom. Id. Defendants' counsel did not agree to remote depositions. Id.

After participating in a conference call with the parties on September 16, Pls.' Mem. at 5, the Court ordered the parties to brief the issue of deposing the plaintiffs who are in Mexico, ECF No. 46. Plaintiffs filed a Motion for a Protective Order and for an Order Permitting Remote Depositions of Certain Plaintiffs. ECF No. 57. Plaintiffs ask the Court to order that the deposition of the nine plaintiffs currently in Mexico be conducted remotely.[1] Id. In Defendants' response, Defendants ask the Court to deny Plaintiffs' motion and to sever the claims of the plaintiffs in Mexico. Defs.' Mem. at 7, ECF No. 75.

### DISCUSSION

#### I. Legal Background

Plaintiffs bring their motion under Fed. R. Civ. P. 26(c)(1) and Fed. R. Civ. P. 30(b)(4). Rule 26(c)(1) allows a court, upon a showing of good cause, to issue a protective order "to protect a party or person from . . . undue burden or expense" associated with a deposition or other discovery by:

---

[1] On September 18, Plaintiffs notified the Court that one of the Plaintiffs that they previously believed was in Mexico, Rodrigo Canales Salazar, is in Texas, reducing the number of Plaintiffs who are currently in Mexico to nine. Notice Regarding Dep. Status at 1, ECF No. 51.

3

> (B) specifying terms, including time and place or the allocation of expenses for the . . . discovery;
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery.

The moving party bears "the burden of establishing 'good cause' by demonstrating that 'specific prejudice or harm will result if no protective order is granted.'" United States ex rel. Davis v. Prince, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) (quoting Phillips v. Gen. Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002)). The moving party cannot rely on merely conclusory or speculative statements. See id. at n.3 (citing Great Am. Ins. Co. v. Gross, No. 3:05-cv-159, 2007 U.S. Dist. LEXIS 39185, at *12 (E.D. Va. May 30, 2007); Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 412 (M.D.N.C. 1991)).

Rule 30(b)(4) allows parties to conduct depositions remotely when they agree to do so or when the court so orders upon motion of a party. Fed. R. Civ. P. 30(b)(4). Rule 30(b)(4) does not specify the showing that a party must make to support a motion for a remote deposition. Davis v. Farrell, No. 16-4874, 2017 U.S. Dist. LEXIS 101279, at *5 (E.D.N.Y. June 29, 2017). However, courts generally have held that the moving party must put forward "a legitimate reason" to conduct the deposition remotely. In re

4

Broiler Chicken Antitrust Litig., No. 1:16-cv-8637, 2020 WL 3469166, *7 (N.D. Ill. June 25, 2020) (citing Kaseberg v. Conaco, LLC, No. 15-cv-1637, 2016 WL 8729927, at *5 (S.D. Cal. Aug. 19, 2016)). Once the moving party makes that threshold showing, "the burden then shifts to the opposing party to show how it would be prejudiced if the deposition were taken in that way." Id.; see also Webb v. Green Tree Servicing LLC, 283 F.R.D. 276, 280 (D. Md. 2012) ("Where a party opposes a motion requesting that a deposition be conducted by remote means, it must make a 'particularized showing' of prejudice." (quoting Jahr v. IU Int'l Corp., 109 F.R.D. 429, 432 (M.D.N.C. 1986))). "The ultimate determination, however, is left to the discretion of the Court after carefully balancing the relevant facts." Davis, 2017 U.S. Dist. LEXIS 101279, at * 5 (citing Stephens v. 1199 SEIU, No. cv-07-596, 2011 U.S. Dist. LEXIS 78017, at *1 (E.D.N.Y. July 19, 2011)).

Also relevant to Plaintiffs' motion is Local Rule 30(A), which requires depositions of plaintiffs to be conducted within the division in which the action is filed. However, a court can order an exception to this rule when "special circumstances exist, as may reasonably interfere with the orderly taking of a deposition at a place within the division." Id.

**II. Analysis**

The parties appear to agree on two issues. First, the parties agree that nine of the plaintiffs are currently in Mexico. See

5

Pls.' Mem. at 1; Defs.' Mem. at 1 ("More than half of the seventeen Plaintiffs . . . have left the United States . . . .").[2] Second, Defendants do not dispute that visa and travel restrictions related to the COVID-19 pandemic make these plaintiffs' travel to Richmond for their noticed depositions impractical, if not impossible, at this time. See Pls.' Mem. at 7-9. However, the parties disagree about how to proceed with the depositions of the nine plaintiffs in Mexico in light of these facts. The Court will first address Plaintiffs' motion for protective order before turning to the issue of remote depositions.

**A. Protective order**

To obtain a protective order, Plaintiffs must show good cause to excuse the plaintiffs currently in Mexico from attending in-person depositions in Richmond. See Fed. R. Civ. P. 26(c)(1). Plaintiffs cite the undue burden that traveling to the United States would place on the plaintiffs in Mexico. Pls.' Mem. at 7. Plaintiffs argue — and Defendants do not dispute — that "it would be extremely difficult, if not impossible for the Mexico-Located Plaintiffs to gain lawful admission to the United States to appear for a deposition in the near future, including the remainder of 2020." Id. (quoting Pls.' Mem. Ex. 6 ¶ 14, ECF No. 58-6). The United States embassy in Mexico has not yet resumed routinely

---

[2] It also is not disputed that a number of plaintiffs left the United States after this action was filed.

6

processing the B1/B2 visitor visas that the plaintiffs need, and the plaintiffs are not likely to be granted significant public benefit parole that would able them to enter the country without a visa. Id. at 8.

Even if the nine plaintiffs in Mexico could obtain visas or parole to travel to the United States for their depositions, courts have found that the health risks related to the ongoing COVID-19 pandemic are good cause to conduct depositions remotely. See Fouad v. Milton Hershey School & Trust, No. 1:19-cv-253, 2020 WL 4228278, at *1 (M.D. Pa. July 23, 2020) (collecting cases). In Fouad, the court found that requiring the plaintiff to travel on interstate public transportation to his deposition would "create undue risk for all parties involved." Id. at *2. Similarly, the nine plaintiffs in Mexico would have to travel back and forth, likely by plane (because of restrictions at the land border) between two countries with some of the highest incidences of COVID-19 in the world. See Pls.' Mem. at 9.

Defendants argue that "Plaintiffs cannot manufacture 'good cause' for a protective order by their failure to plan for their depositions and preserve their testimony." Defs.' Mem. at 3. Defendants suggested during the September 16 conference call with the Court that Rules 27 and 30 required Plaintiffs to preserve the testimony of the nine plaintiffs before they returned to Mexico. Pls.' Mem. at 12.

7

However, neither Rule 27 nor Rule 30 support the Defendants' argument. Rule 27 provides a mechanism for conducting depositions when a suit is contemplated but a plaintiff "cannot presently bring it or cause it to be brought," Fed. R. Civ. P. 27(1)(A), and there is some danger that the testimony will be lost, see 8A Charles Alan Wright & Arthur P. Miller, Federal Practice & Procedure § 2072 (3d ed. updated Apr. 2020). Similarly, Rule 30(a)(2)(iii) provides a mechanism for conducting depositions after a civil action commences but before the parties conduct their Rule 26(f) conference if "the deponent is expected to leave the United States and be unavailable for examination in this country after that time." Fed. R. Civ. P. 30(a)(2)(iii).

All nine plaintiffs currently in Mexico left the United States before the complaint was served on Defendants in January 2020. See Pls.' Mem. 13-14; Pls.' Mem. Ex. 5, ECF No. 58-5. Four have been in Mexico since 2017 or 2018, and five returned to Mexico in November or December of 2019, after the Complaint was filed but before it was served on the Defendants. Id. Moreover, when they left the United States, none had reason to believe that a pandemic would prevent their return to the United States, making them unavailable for depositions here. Four left even before this suit was anticipated; Plaintiffs' counsel first had contact with Plaintiffs in approximately May 2019. Id. at 13. Under these circumstances, Plaintiffs had no reason to attempt to preserve

8

their testimony under Rules 27 or 30. Thus, Plaintiffs have established good cause to issue a protective order preventing the in-person depositions in Richmond of the plaintiffs currently in Mexico.

## B. Remote depositions

Instead of in-person depositions, Plaintiffs propose that Defendants depose the plaintiffs in Mexico remotely by using Zoom or similar video-conferencing technology according to the Federal Rules of Civil Procedure. Under Rule 30(b)(4) and Local Rule 30, Plaintiffs must prove that there is a legitimate reason to conduct a remote deposition and that special circumstances justify deposing Plaintiffs outside of the division where they filed suit. Fed. R. Civ. P 30(b)(4); E.D. Va. Adm. R. 30. By proving good cause to issue a protective order, Plaintiffs have satisfied these standards.

The burden is then on Defendants to show prejudice. Defendants first argue that the nine plaintiffs cannot be deposed according to the Federal Rules while in Mexico because doing so would violate the Hague Convention. Even if the plaintiffs could be deposed while in Mexico, Defendants argue, such depositions, involving a large number of documents and interpreters, would severely prejudice Defendants.

### i. Hague Convention

Defendants argue that "[d]epositions taken in Mexico must comply with the Hague Convention." Defs.' Mem. at 2. The Supreme Court has held otherwise. In Société Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa, 482 U.S. 522, 524 (1987), the Court addressed whether document discovery from a party in France had to be conducted according to the Hague Convention. The Court held that the Convention does not strip a district court "of the jurisdiction it otherwise possessed to order a foreign national party before it to produce evidence physically located within a signatory nation." Id. at 539-40. Rather, the Convention provides an alternate set of discovery procedures: it is a "permissive supplement, not a pre-emptive replacement, for other means of obtaining evidence located abroad." Id. at 536. Before directing parties to use of Convention procedures, a court should scrutinize "the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective." Id. at 544; see In re Auto. Refinishing Paint Antitrust Litig., 358 F.3d 288, 300 (3d Cir. 2004) (referring to this three-prong test); MeadWestvaco Corp. v. Rexam PLC, No. 1:10-cv-511, 2010 U.S. Dist. LEXIS 139843, at *3-*4 (E.D. Va. Dec. 14, 2010) (adopting the three-prong test and collecting cases).

Defendants do not offer any argument for why the depositions of the plaintiffs in Mexico should nevertheless be conducted according to the Hague Convention. The Third Circuit has held that the party proposing to use Convention procedures bears the burden of persuasion. In re Auto. Refinishing, 358 F.3d at 305 (citing Aérospatiale and collecting cases); see Aérospatiale, 482 U.S. at 547 (suggesting that Hague Convention procedures may be used when a party can "demonstrate appropriate reasons for employing Convention procedures"). Defendants have not identified any sovereign interest of Mexico at stake or demonstrated that Hague Convention procedures are likely to be effective. Moreover, Plaintiffs have consented to be deposed in Mexico. Pls.' Reply at 4, ECF No. 79; see Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V., 292 F.R.D. 19, 24 (D.D.C. 2013) (finding that the voluntary deposition of a witness in Mexico under the Federal Rules is less burdensome than deposing the witness following Convention procedures). On this record, the Defendants have not carried their burden to show that "the particular facts" and "the sovereign interests" animate the applicability of the Hague Convention. Nor does the record contain a basis for finding that the procedure of the Convention will prove effective.

    **ii. Prejudice**

Defendants argue that conducting remote depositions would severely prejudice them. Defs.' Mem. at 4. Defendants cite the

11

complexity of two in-person depositions conducted thus far, which lasted more than seven hours with few breaks and involved interpreters and more than 30 documents each. Id. Defendants "can foresee even longer translation and document handling delays and interruptions if the witnesses were in Mexico appearing over Zoom." Id. at 5. Defendants also argue that without in-person depositions, they will not be able to adequately assess the plaintiffs' demeanors. Defs.' Mem. at 5-6. On the other hand, Plaintiffs contend that concerns about documents and interpreters "can be addressed reasonably" to facilitate remote depositions. Pls.' Mem. at 5.

Deposing Plaintiffs requires interpreters whether the depositions are conducted in person or remotely. Defendants speculate that remote depositions would cause longer translation delays than the parties have experienced at in-person depositions, Defs.' Mem. at 4-5, but Defendants have not explained why that would be the case or offered any authority or evidence to buttress that prediction. See Valdivia v. Menard Inc., No. 19-cv-50366, 2020 U.S. Dist. LEXIS 132935, at *4 (N.D. Ill. July 28, 2020) (rejecting a similar assertion that the need for interpretation during a deposition by video prejudiced the deposing party). In Valdivia, the court noted that it had observed "interpreters . . . that are capable of proceeding effectively through remote means" and that counsel had also "successfully used

interpreters for remote depositions in the past," id. at *4, *6, a sentiment echoed by Plaintiffs' counsel, Pls.' Mem. at 7. Defendants have not proved any special prejudice from the use of interpreters in a remote deposition.

Like depositions involving interpreters, depositions involving many documents generally take longer than depositions involving fewer documents.  However, courts have approved document-intensive remote depositions while recognizing the challenges that they present for parties. See Reynard v. Washburn Univ. of Topeka, No. 19-4012, 2020 U.S. Dist. LEXIS 118631, at *14 (D. Kan. July 7, 2020) ("Despite the difficulties with using documents during a remote deposition, the Court is confident counsel in this case are very capable and can make the deposition work effectively with exhibits."); Sonrai Sys., LLC v. Romano, No. 16-cv-3371, 2020 U.S. Dist. LEXIS 122339, at *12 (N.D. Ill. July 13, 2020) (acknowledging the deposing party's "logistical concerns regarding a remote deposition in light of the number of documents involved" but finding remote depositions possible); United States ex rel. Chen v. K.O.O. Constr., Inc., No. 19-cv-1535, 2020 U.S. Dist. LEXIS 81866, at *4-*5 (S.D. Cal. May 8, 2020) (recognizing "the challenges to the legal community during this pandemic" but finding that "voluminous and highly detailed exhibits" do not preclude remote depositions).

13

Plaintiffs outline a plan for dealing with documents similar to those endorsed by other courts. See K.O.O. Constr., 2020 U.S. Dist. LEXIS 81866, at *4 (collecting cases); Reynard, 2020 U.S. Dist. LEXIS 118631, at *14 (advising providing the deponent with binder of the relevant exhibits). Defendants would send the documents to the site of the deposition in advance (in this case, a Mexican law firm). Pls.' Mem. at 6. Any last-minute additions could be shown on the computer screen or emailed and printed locally. Id. Further, Plaintiffs are willing to cover shipping costs. Id. With proper planning, the use of many documents "is not an obstacle to a successful remote videoconference deposition." Rouviere v. DePuy Orthopaedics, Inc., No. 1:18-cv-4814, 2020 WL 3967665, at *3 (S.D.N.Y. July 11, 2020).

Defendants' argument that without in-person depositions they will not be able to adequately assess the plaintiffs' demeanors is similarly unavailing for three reasons: (1) Defendants' diminished ability to assess the plaintiffs' demeanors, standing alone, does not counsel against proceeding with a remote deposition; (2) Defendants can assess the plaintiffs' demeanors to some extent in the video deposition; and (3) in the context of the COVID-19 pandemic, Defendants may in fact be able to better assess the plaintiffs' demeanors in a video deposition because the plaintiffs would not need to wear masks.

First, the fact that Defendants' ability to assess the plaintiffs' demeanors by video conference is less than it would be in person does not itself establish the prejudice necessary to defeat a motion for remote depositions. If the inability to assess a deponent's demeanor in person alone suffices to show prejudice, then Rule 30(b)(4) would be without meaning or effect. See Grupo Petrotemex, S.A. de C.V. v. Polymetrix AG, No. 16-cv-2401, 2020 WL 4218804, at *3 (D. Minn. July 23, 2020); Webb, 283 F.R.D. at 280.

Second, depositions conducted by video conference do generally allow counsel to assess a deponent's demeanor, albeit not to the same extent as an in-person deposition. See Learning Res., Inc. v. Playgo Toys Enters. Ltd., No. 19-cv-00660, 2020 WL 3250723, at *3 (N.D. Ill. June 16, 2020) ("[M]any courts have held that remote videoconference depositions offer the deposing party a sufficient opportunity to evaluate a deponent's nonverbal responses, demeanor, and overall credibility.").

Defendants cite one case, United States v. 2003 BMW X5 SUV, No. 14-912, 2015 U.S. Dist. LEXIS 66181 (D. Md. May 15, 2015), to support their argument that video conferencing does not allow an adequate assessment of a deponent's demeanor. In 2003 BMW, the court rejected a deponent's request to be deposed by video conference based on a finding that it was not clear whether the party taking the deposition could effectively present documents to the deponent and gauge her response to questions via video. Id. at

15

*5. However, the court cited only Webb and Jahr to support its conclusions, neither of which involved video depositions. See 2003 BMW at *4-*5; see generally Webb, 283 F.R.D. at 277 (resolving a motion to take a deposition via telephone); Jahr, 109 F.R.D. at 430 (same). The other two cases Defendants cite for the importance of "face-to-face depositions" did not involve potential depositions by video conference. See Arrocha v. McAuliffe, 109 F.R.D. 397, 399 (D.D.C 1986) (rejecting a deposition by telephone in favor of an in-person deposition); Seuthe v. Renwal Prods., Inc., 38 F.R.D. 323, 324 (S.D.N.Y 1965) (rejecting written interrogatories in favor of an in-person deposition).

Finally, in the context of the COVID-19 pandemic, depositions conducted by video conference may allow counsel to better assess a deponent's demeanor than they could in person. During a remote deposition, the deponent need not wear a mask to prevent the spread of COVID-19 among in-person participants. See Sonrai Sys., 2020 U.S. Dist. LEXIS 122339, at *11-*12 (finding that wearing a mask eliminates the advantage of an in-person deposition compared to a deposition by video conference). Indeed, to date, Plaintiffs have worn masks for the duration of their in-person depositions. Pls.' Mem. at 7.

Although Defendants have valid concerns that remote depositions do not allow the same assessment of the plaintiffs' demeanors and will take longer than in-person depositions, these

16

concerns do not establish prejudice that would foreclose taking remote depositions under the current circumstances. See Sonrai Sys., 2020 U.S. Dist. LEXIS 122339, at *10 (finding that similar concerns "are not sufficient to outweigh the good cause shown to conduct the depositions remotely"); Impulsora De Marcas E Intangibles v. Dos Amigos, Inc., No. 6:19-cv-453, 2020 U.S. Dist. LEXIS 145434, at *5 (W.D. Tex. June 26, 2020) (finding that a lengthier deposition is a "small price to pay" for avoiding the risks associated with conducting an in-person deposition during the COVID-19 pandemic). Because the plaintiffs in Mexico are unlikely to be able to travel to the United States legally and safely in the near future due to circumstances beyond their control, the possibility that remote depositions might take longer and be less helpful in gauging the deponents' demeanor than in-person depositions is not a sufficient reason to avoid at least attempting to conduct remote depositions.

**B. Severance**

Under Rule 42(b), a court has authority to order a separate trial for one or more claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Similarly, Rule 21 gives courts the authority to sever parties or claims "at any time, on just terms," either on motion or sua sponte. Fed. R. Civ. P. 21; see Gregory v. FedEx Ground Package Sys., No. 2:10-cv-630, 2012 U.S. Dist. LEXIS 87798, at *32 (E.D.

17

Va. May 9, 2012) ("Courts also use Rule 21 to sever and drop claims or parties based on 'considerations of fundamental fairness, judicial economy, prejudice, undue delay, as well as the dual threat of duplicitous litigation and inconsistent verdicts.'" (quoting John S. Clark Co., Inc. v. Travelers Indem. Co. of Ill., 359 F. Supp. 2d 429, 441 (M.D.N.C. 2003)).

Defendants ask the Court to sever the claims of the plaintiffs currently in Mexico from the claims of the plaintiffs located in the United States and to try them separately because Plaintiffs "have not proposed a reasonable solution that protects Monterrey Concrete from prejudice" to depose the nine plaintiffs in Mexico. Defs.' Mem. at 7.

At this point, the interests of judicial economy and avoiding prejudice would best be served by continuing with discovery on all of Plaintiffs' claims. As discussed above, given the COVID-19 pandemic, remote depositions will not unduly prejudice Defendants and can be conducted under the Federal Rules of Civil Procedure. Further, proceeding with the remote depositions of the nine plaintiffs in Mexico avoids prejudicing those plaintiffs by delaying resolution of their claims unnecessarily. See In re Broiler Chicken, at *9 ("Courts also recognize a basic 'underlying principle' that '[t]he right to proceed in court should not be denied except under the most extreme circumstances.'" (quoting

18

<u>CFTC v. Chilcott Portfolio Mgmt., Inc.</u>, 713 F.2d 1477, 1484 (10th Cir. 1983)).

Moreover, Plaintiffs raise a complicating issue: whether the evidence supporting the claims of the plaintiffs in the United States and those in Mexico is "heavily overlapping and interlocking." Pls.' Reply at 9. Plaintiffs cite as an example an incident between De La Rosa and one of the plaintiffs currently in Mexico, Victor De Los Reyes Rabanales, which was witnessed by several plaintiffs who are currently in the United States. <u>Id.</u> at 9-10. While this single example is insufficient to prove that Plaintiffs' claims or trials could not be severed in the future, it does suggest caution. <u>See</u> <u>Harper v. Pilot Travel Ctrs., LLC</u>, No. 2:11-cv-759, 2012 WL 395122, at *6 (S.D. Ohio Feb. 7, 2012) (denying a motion for severance because "it is simply too early to tell whether the testimony and evidence of one Plaintiff will be relevant to the claims of the other Plaintiffs"). Even if the Court were presently to sever the claims of the plaintiffs in Mexico, the claims of the plaintiffs in the United States may depend on continued discovery involving the plaintiffs in Mexico. Therefore, the Court will not now sever the claims of the plaintiffs currently in Mexico, but will entertain a formal motion for severance from Defendants after depositions of those plaintiffs have concluded so that Defendants have a chance to assess how prejudicial severance

19

of their claims would be to Plaintiffs' presentation of their case.[3]

## CONCLUSION

For the foregoing reasons, PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER AND FOR AN ORDER PERMITTING REMOTE DEPOSITIONS OF CERTAIN PLAINTIFFS (ECF No. 57) will be granted.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 30, 2020

---

[3] To that end, the Court reserves whether to order in-person deposition or trial testimony of the plaintiffs located in Mexico upon a showing of good cause.